857 P.2d 1317

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–8441.**

**No. 1 CA–JV 91–0016.**

Court of Appeals of Arizona, Division 1, Department B.

May 25, 1993.

Redesignated as Opinion and Publication Ordered Aug. 5, 1993.

---

Peter S. Balkan, Phoenix, for appellant Father.

Helm & Kyle, Ltd. by Margaret R. Tinsley, Tempe, for appellee Arizona Dept. of Economic Security.

Jeanine J. Kenyon, Phoenix, for Minor Child.

1. The natural mother of the child voluntarily relinquished her rights to the child, and is not

## OPINION

This appeal has been considered by the court, Presiding Judge RUDOLPH J. GERBER and Judges EINO M. JACOBSON and PHILIP E. TOCI participating.

The natural father[1] appeals from the juvenile court's 1990 order terminating his parental rights to his daughter on the grounds of out-of-home placement, A.R.S. § 8–533(B)(6). This case was remanded to this court for disposition on the merits after the Arizona Supreme Court held that the notice of appeal was timely filed. *See Maricopa County Juv. Action No. JS–8441*, 174 Ariz. 341, 849 P.2d 1371 (Ariz. 1992).

### Standard of Review

A termination order must be supported by clear and convincing evidence establishing a statutory ground and the best interest of the child. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Maricopa County Juv. Action No. JS–6831*, 155 Ariz. 556, 558, 748 P.2d 785, 787 (App.1988). However, the issue on appeal is whether any reasonable evidence supports the juvenile court's findings. *Maricopa County Juv. Action No. JS–3594*, 133 Ariz. 582, 585, 653 P.2d 39, 42 (App.1982). On appeal, this court will accept the findings of the juvenile court unless they are clearly erroneous; we will not reweigh the evidence. *Pima County Juv. Severance Action No. S–2462*, 162 Ariz. 536, 539, 785 P.2d 56, 59 (App.1989).

### Out of Home Placement

In this case, the petition for termination of the father's parental rights to his now six-year old daughter alleged statutory grounds for severance under both the one-year out-of-home placement and the two-year out-of-home placement provisions of A.R.S. § 8–533(B)(6). Although the juvenile court did not specify whether termi-

involved in this appeal.

nation was based on the one-year or two-year subsection, the father does not dispute that the requisite length of time in out-of-home placement was met in either case. Because the juvenile court included all the requisite findings to support termination under the grounds set forth in A.R.S. § 8–533(B)(6)(b), the two-year subsection, we examine the sufficiency of the evidence on that statutory basis.[2]

■ Under this statutory subsection, after finding the two-year time period is met, the court must make the following findings: (1) the agency has made a diligent effort to provide appropriate remedial services; (2) the parent has been unable to remedy the circumstances which caused the child to be in an out-of-home placement; and (3) a substantial likelihood exists that the parent will not be capable of exercising proper and effective parental control in the near future. *See Maricopa County Juv. Action No. JS–6520,* 157 Ariz. 238, 243, 756 P.2d 335, 340 (App.1988). The court must also find severance to be in the best interest of the child; that is, that severance provides some benefit over the continuation of the parent-child relationship. *Maricopa County Juv. Action No. JS–500274,* 167 Ariz. 1, 6, 804 P.2d 730, 735 (1990). The father challenges the sufficiency of evidence on each of these elements.

### Diligent Efforts to Provide Remedial Services

■ The father contends that DES was not diligent in its efforts to provide him with remedial services because he had "personality conflicts" with his primary caseworker at Child Protective Services

that impeded his efforts to regain custody of his daughter. We disagree.

Although the caseworker admitted at trial that the father displayed animosity towards him, he also testified:

> What I did was establish Jewish Family and Children's Service as an intermediary so that any animosity that existed on a personal basis would not compromise his abilities to show his parenting skills and to obtain custody of his child.

Because of the child's special needs and the father's borderline learning ability, the caseworker provided for specialized parenting classes, with one-on-one training, and supervised weekly visitation with the child, at which the father was encouraged to care for her medical needs, and allowed to feed, change, and bathe her. A parent aide who supervised five visitations and had nine parenting sessions with the father testified that she communicated with him more than his caseworker because "he was very angry at Larry's authority"; however, the father was generally cooperative with her. The parent aide who supervised his visitation for a year testified that, although the visits "went very well," the father had "an attitude problem," that he was "mad at everyone in the world," and refused to do things that would help him personally and assist him in regaining custody because of his anger at both his caseworker and Child Protective Services.

Besides specialized parenting classes and supervised visits, the record clearly shows that DES provided the father with the opportunity to participate in psychological counseling, a psychiatric evaluation, alcohol abuse programs, and CPR, first aid and

**2.** The juvenile court's conclusion in support of this statutory grounds provided as follows:

> The evidence clearly and convincingly establishes that the child is being cared for in an out-of-home placement under the supervision of the Arizona Department of Economic Security, that the Agency responsible for her care has made a diligent effort to provide appropriate remedial services for the child and that the child has been in an out-of-home placement for an accumulative total period of two years or longer pursuant to Court Order, and that the child's father has substantially neglected, wilfully refused or has been unable

> to remedy the circumstances which have caused the child to be in an out-of-home placement, and there is substantial likelihood that he will not be capable of exercising proper and effective parental care and control in the near future.

It is undisputed that the child has been in foster care since November 7, 1986, more than two years before the filing of the petition for termination in this case. Thus, if the evidence supports the termination order on the basis of the two-year ground, we need not consider whether the grounds for the one-year provision were met.

nutrition classes that he did not attend. The father also refused to sign the social agreement identifying the steps he needed to take to regain custody, and refused to participate in an anger control group. His caseworker testified that the father's anger has remained a "roadblock" to custody. Several DES witnesses testified that they could think of nothing more the agency could do to provide services that would assist in reunification of the father and his special needs daughter.

■ Under these circumstances, we believe the juvenile court's finding that DES made diligent efforts to provide appropriate remedial services is supported by the evidence. Although severance should not be considered unless every effort to reunify the family has been made, DES is not required to provide "futile" services. *Pima County Severance Action No. S–2397*, 161 Ariz. 574, 577, 780 P.2d 407, 410 (App.1989); *Maricopa County Juv. Action No. JS–5209 and JS–4963*, 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (App.1984). Here, the record establishes that DES made a diligent effort to reunite the father and the child by providing appropriate remedial services.

*Circumstances Which Cause Child to be in Out–Of–Home Placement*

■ The father contends that, in considering whether he had remedied the "circumstances which cause the child to be in out-of-home placement," the juvenile court erred in considering the current circumstances of the child's condition that had developed since the filing of the initial dependency petition. He argues that, because the child's medical needs were continually changing since she was made a dependent child, he had no "notice" of what steps he needed to take to "remedy" the out-of-home placement, and thus the juvenile court should have limited its inquiry to whether he had remedied those circumstances alleged in the initial dependency petition, and no others. We disagree with this argument for two reasons.

First, the statute clearly refers to circumstances that "cause," not "caused," the out-of-home placement. The "cause" of that placement at the time of the severance petition was the fact that the child had been adjudicated a dependent child, that is, one "[i]n need of proper and effective parental care and control and no ... parent ... capable of exercising such care and control." A.R.S. § 8–201(11)(a). One reason that the father was unable to care for the child at the time of the severance was because of her special needs, some of which had not yet been discovered at the time the dependency petition was filed. For example, at the time DES became involved in November 1986, the child was less than six months old and had been diagnosed with fetal alcohol syndrome and failure to thrive. As she continued in foster care over the three and a half year period preceding the severance, it became apparent that she was also developmentally delayed, had severe respiratory problems requiring special medical care, and needed speech therapy. The testimony at the severance trial was that the child's developmental lag has worsened with the passage of time. The evidence also established that the father has refused to believe that the child's developmental problems were as serious as they are or that they are permanent. The evidence also indicated that the father was currently unable to provide for the child's needs or to minimally parent her on a full-time, long-term basis. Thus, even if the juvenile court had found that the father had succeeded in remedying the specific circumstances that existed at the time the dependency petition was filed, there was no evidence that the father was now capable of exercising effective parental care and control. Therefore, the child would still be dependent and in an out-of-home placement for more than two years.

■ Taking the father's argument to its logical extreme, DES would need to file a new dependency petition every time the child's medical condition worsened, and begin the running of the two-year placement anew. This is hardly the legislative intent in enacting a statute "in response to the increasing number of children in foster care whose parents maintain parental

rights but refuse to assume their responsibilities." *JS–6520*, 157 Ariz. at 243, 756 P.2d at 339. The express purpose of the statute is to "expedite the adoption of numerous children who remain in temporary foster care with no hope of being returned to their natural parents and in so doing promote a stable and long term family environment for these children." 1986 Ariz. Sess.Laws, ch. 205, § 1. In light of this stated purpose, we construe the "circumstances which cause the child to be in out-of-home placement," A.R.S. § 8–533(B)(6), to mean those circumstances existing at the time of the severance rather than at the time of the initial dependency petition.

On this record, we have no difficulty finding evidence to support the father's failure to remedy those circumstances. The record clearly supports the juvenile court's findings that the father's inconsistent participation in some services, failure to cooperate in others, instability in residence and employment, and failure to acknowledge the extent of the child's medical and developmental problems rendered him unable to remedy the circumstances that cause the child to remain in an out-of-home placement.

Second, even if we were to adopt a narrow reading of such "circumstances" that would compel the juvenile court to consider only those alleged in the dependency petition, we would still reject the father's contention that he has remedied those circumstances. Although the dependency petition alleged that the child had fetal alcohol syndrome and was a "failure to thrive" infant—a physical condition that apparently recedes with maturity—other circumstances were also alleged that initially caused the child's out-of-home placement, including the father's alcohol abuse and anger control problems. The record in this case supports the juvenile court's findings that these circumstances have not been remedied, due primarily to the father's failure to cooperate with DES. Although the father presented some evidence of his latest attempts at counseling and AA attendance in California, the court correctly concluded that this "last minute flurry of ac-

tivity" in the areas of alcohol and anger counseling is "yet another token effort" that does "not appear to be sincere." *See Maricopa County Juv. Action Nos. JS–4118/JD–529*, 134 Ariz. 407, 409, 656 P.2d 1268, 1270 (App.1982) ("[t]here always comes a point where the trial court must decide whether the natural parent is making a good-faith effort to reunite the family;" if efforts are "token," severance is warranted). Because the father still has many of the problems that were alleged in the original dependency petition, his argument fails even under his construction of the meaning of "circumstances."

■ We also reject the father's contention that he did not have "notice" of the circumstances he would have to remedy before he could regain custody of his daughter. His own testimony indicates such notice:

Q. Isn't it true that the State of Arizona has told you from the day practically that they took [the child] away what you needed to do to get her back?

A. Yes.

The records and testimony of the DES caseworkers and parent aides also support the fact that the father was advised at every stage of the child's development about what he needed to do to regain custody. We thus reject his "notice" argument.

### Best Interests of the Child

■ The father's attack on the sufficiency of the evidence to establish that severance is in the best interests of the child also incorporates a contention that the evidence did not support a finding of a substantial likelihood that he will not be "capable of exercising proper and effective parental care and control in the near future." *See* A.R.S. § 8–533(B)(6)(b). However, we find this finding supported by the evidence.

The father admitted he lived in a "ghetto," a crime and drug-infested neighborhood inappropriate for his daughter, but that he had intentions of moving within six months. The record indicates that the father changed residence at least twelve times from the dependency to the severance, and was sporadically employed. The

evaluating psychologist opined that the father was "prone to relapse" in his use of alcohol, that his prognosis regarding his anger problem without treatment was poor, and the likelihood of his changing on his own was "minimal." He believed the child would be "at risk of neglect" in the father's care.

The primary caseworker testified that the father's alcohol abuse affected his ability to parent a special needs child, because he was more focused on meeting his own needs than hers. He also believed the father's temper would place the child at risk. He opined that severance was in the best interest of the child because delaying the severance to give the father additional time to develop his parenting ability would be "emotionally abusive" to the child because it would "continue her in the state of limbo forever." All of the caseworkers and parent aides testified that, although the child did not seem to have bonded to her father, she had bonded to her foster-adopt parents, and that moving her without a guarantee of permanent placement would be damaging to the child.

■ A child's right to effective and proper parental care includes adequate physical care and emotional security. *JS–5209 and JS–4963*, 143 Ariz. at 185, 692 P.2d at 1027. The father has not evidenced a substantial likelihood of being capable of providing either in the foreseeable future. We believe the evidence on this record is sufficient to establish both the substantial likelihood that the father will be unable to effectively parent this special needs child in the foreseeable future, and that the best interests of the child will be served by severance and the subsequent placement plan of adoption. The benefit of severance to the child is that which the legislature intended: freedom to be adopted into a stable and nurturing home. *See JS–500274*, 167 Ariz. at 6, 804 P.2d at 735.

For the foregoing reasons, we affirm the order of the juvenile court terminating the father's parental rights.