NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TIANA S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.W., L.W., T.O., D.M., P.M.,
*Appellees.*

No. 1 CA-JV 15-0240
FILED 1-26-2016

Appeal from the Superior Court in Maricopa County
No. JD15401
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Gates Law Firm, LLC, Phoenix
By S. Marie Gates
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Patricia K. Norris joined.

---

**P O R T L E Y**, Judge:

**¶1** Tiana S. ("Mother") appeals the order terminating her parental rights to her five children ("the Children"). For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2** Before Mother was sentenced to two years in prison for identity theft, she placed the Children with her sister ("Aunt"), but failed to give her sister any legal authority to provide for the Children's medical, physical, and educational needs. The Department of Child Safety ("DCS") subsequently filed a dependency petition, alleging Mother had "failed to make appropriate legal arrangements for the care of her children." Mother did not contest the allegations, and the Children were found to be dependent.

**¶3** Nearly a year after Mother was released from prison, the juvenile court changed the case plan and DCS subsequently filed a motion to terminate Mother's rights to the Children. After a trial, the court granted the motion. The court found that DCS had proven by clear and convincing evidence that the Children had been in an out-of-home placement for more than fifteen months, DCS had made diligent efforts to provide appropriate reunification services to Mother, Mother had been unable to remedy the circumstances that caused the children to be in the out-of-home placement, and, by a preponderance of evidence, that termination was in the Children's best interests. Mother appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-2101(A)(1).

---

[1] "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't. of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010) (citation omitted).

**DISCUSSION**

¶4        Mother argues the juvenile court erred because DCS failed to prove that her rights should be terminated.  She also argues termination was not in the Children's best interests.[2]

¶5        A parent's parental rights can be terminated when a juvenile court finds by clear and convincing evidence the existence of a statutory ground to support the termination, *Kent K. v. Bobby M.,* 210 Ariz. 279, 281-82, ¶ 7, 110 P.3d 1013, 1015-16 (2005), and by a preponderance of the evidence that termination is in the best interests of the children.  *Id.* at 288, ¶ 42, 110 P.3d at 1022; *see also* A.R.S. § 8-537.  On appeal, we will affirm a severance order unless it is clearly erroneous, and will accept the court's findings of fact unless there is no reasonable evidence to support a finding. *Jesus M. v. Ariz. Dep't. of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002).

**A. Statutory Ground for Termination**

¶6        Mother argues the court's ruling was clearly erroneous because "[t]he record is void of any evidence" demonstrating that the ground for termination was satisfied.  We disagree.

¶7        When a child has been in an out-of-home placement for fifteen months or longer pursuant to a court order, termination of parental rights is justified if the parent fails to remedy the circumstances that caused the out-of-home placement and there is a substantial likelihood the parent will not be capable of exercising proper and effective parental care in the future.[3] *See* A.R.S. § 8-533(B)(8)(c).  And we have said that the "circumstances which cause the child to be in out-of-home placement" means "those circumstances existing at the time of the severance rather than at the time of the initial dependency petition." *Maricopa Cty. Juv. Action No. JS-8441*, 175 Ariz. 463, 468, 857 P.2d 1317, 1322 (App. 1993) (citation omitted), *abrogated on other grounds by Kent K.*, 210 Ariz. 279, 110 P.3d 1013.

---

[2] Mother also argues the ruling was untimely, but fails to cite to a single rule, statute, or case in support of her argument.  As a result, she has waived that argument.  *See Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117-18, ¶ 9, 357 P.3d 150, 152-53 (App. 2015).

[3] Section 8-533(B)(8)(c) also requires DCS to prove that it made diligent efforts to provide reunification services, but Mother does not argue that DCS failed to provide appropriate services.

¶8            Here, the Children were found to be dependent because Mother was involved in criminal activity, subsequently sent to prison, but had not given Aunt the ability to legally act for the Children.  At the severance trial, there was evidence that Mother continued to be involved in illegal activity; she recently pled guilty to shoplifting, had received a traffic citation for failing to show a driver's license, failing to possess proper license plate lights, and failing to produce evidence of insurance, and she and her new husband ("Husband") had gotten into a physical domestic altercation at a Circle K gas station that resulted in minor injuries to both.  Given that evidence, along with a report from a psychiatrist, who evaluated Mother and opined that she "struggles with lawful behavior and would have difficulty providing her children with reasonable role modeling," the evidence supports the juvenile court's finding that Mother failed to remedy the circumstances that caused the Children's out-of-home placement.

¶9            The record also supports the court's determination that Mother would be incapable of exercising proper, parental care in the near future.  In addition to her legal problems, Mother's "poor choices . . . keep the children out of her care."  Mother has been the victim of domestic violence for most of her life, and by men with extensive criminal histories.  In fact, the psychiatrist's report stated that Mother had "a pattern of involvement with problematic men," and that she would "need to address her relationships with men if she is to stably and safely parent her children."

¶10            She, however, did not work towards having better relationships.  Soon after she was released from prison, Mother started dating the man she would marry, who spent nearly a decade in prison, despite the concerns of various counselors and a psychologist.  She knew DCS did not want the man to be around the Children, and appeared to agree when she wrote a letter to the court in September 2014, stating she had "opted to have less frequent contact with [Husband], because my main focus is my children at this time."  Despite the letter, a red herring, Mother continued dating the man and married him two months after DCS filed its motion to terminate her parental rights.  As a result, she chose her Husband over her children, despite otherwise completing services designed to reunify the family.  Consequently, there was evidence supporting the court's finding that there was a substantial likelihood that Mother would not be capable of exercising proper and effective care of the children in the near future.

¶11            Mother also claims the juvenile court erred in finding she was not a credible witness.  During her testimony, Mother denied several contacts involving law enforcement, despite the existence of credible

evidence to the contrary. We do not reweigh testimony. "The [juvenile] court [is] in the best position to measure" credibility based on all the evidence presented, especially where there is conflicting testimony. *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107, 876 P.2d 1137, 1142 (1994). We find no abuse of discretion by the court's credibility determination.

**B. Best Interests of the Children**

¶12          Mother argues termination was not in the Children's best interests. She claims there were other less drastic alternatives like "a simple guardianship" or "[s]ole custody rights to the fathers with supervised parenting time."

¶13          To establish best interests, the juvenile court had to find that "the [Children] would benefit from a severance *or* be harmed by the continuation of [their] relationship" with Mother. *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990) (citations omitted). A benefit exists when, for example, a child will become adoptable as a result of the termination. *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994). It can also exist when a child will "benefit psychologically from the severance." *See id.* And because we give great weight to the Children's interest in being in a safe, loving, and stable home, *Kent K.*, 210 Ariz. at 287, ¶ 37, 110 P.3d at 1021, a court can also consider evidence showing that the "existing placement is meeting the needs" of the children. *Mary Lou C. v. Ariz. Dep't. of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004) (citation omitted).

¶14          The Children have been living with Aunt for more than three years. At the time of the severance hearing, the oldest child had recently been named to his school's honor roll, and placed fourth at a state geography event. The second oldest boy was associating with other children during lunchtime and participating in activities with the rest of his class, something he was apparently unable to do before coming into Aunt's care as a result of previous behavioral problems. The middle child was reading, writing, and "bringing home star-student awards." The two youngest daughters were learning the alphabet and how to count, and, in the case of the youngest child, learning "all her colors." And Aunt testified she was willing to continue providing a safe and stable environment for the Children, and said she had the ability to meet their social, emotional, financial, and educational needs. Clearly, Aunt has been providing nurturing care for the Children.

**¶15**　　　　Moreover, the termination will free two of the Children for adoption by their Aunt.　She is also willing to adopt the other three, or as many who may be freed for adoption, but recognizes it is important that they remain together.　Consequently, the court did not abuse its discretion by finding that termination of Mother's parental rights was in the best interests of the Children.

## CONCLUSION

**¶16**　　　　We affirm the termination of Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama