NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JESSE O., DANIEL W.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY,[1] S.O., R.O.,
*Appellees*.

No. 1 CA-JV 16-0232
FILED 12-29-16

Appeal from the Superior Court in Maricopa County
No. JD24265
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Mother*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant Father*

---

[1]     Pursuant to S.B. 1001, Section 157, 51st Leg., 2d Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter.  *See* ARCAP 27.

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Paul J. McMurdie joined.

---

**J O H N S E N**, Judge:

**¶1** Jesse O. and Daniel W. ("Mother" and "Father") appeal the superior court's order terminating their parental rights to their two daughters, S.O. and R.O. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** S.O. was born in 2012.[2] A little more than a year later, she was admitted to Phoenix Children's Hospital and diagnosed with "Severe Failure to Thrive." At the time, S.O. was below the fifth percentile for height and weight—she was the size of an average three-month-old—and had not gained any weight in six months. Additionally, she was severely developmentally delayed. When Mother and Father visited S.O. in the hospital, they required multiple prompts to feed her and change her diaper. Mother reportedly appeared "completely disengaged." Those events, in part, caused hospital staff to raise concerns regarding "parental noninvolvement with child care at home."

**¶3** Before she left the hospital, S.O. also was diagnosed with severe oral aversion, developmental delay and severe left-sided hydronephrosis (i.e., swelling of the kidney). S.O.'s doctor concluded there was a risk of permanent developmental problems if S.O. did not begin to grow. For that reason, the doctor recommended in-home services to monitor S.O.'s progress. These services, the doctor hoped, also might "shed some light on how the parents interact" with S.O. S.O. was discharged from the hospital on June 7, 2013.

---

[2] We view the facts and draw all reasonable inferences in the light most favorable to upholding the superior court's order. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶4 On August 22, 2013, a case manager from the Department of Child Safety ("DCS") and a family preservation counselor visited the family's home. The case manager arrived at 11:00 a.m. and found Mother and Father asleep with S.O. The child had not yet eaten, but her parents were unable to prepare her formula because they were out of purified water, which S.O. required due to her kidney condition. When Father was asked, he said he was not sure what diet S.O. was on.

¶5 The case manager and counselor saw trash, including old food wrappers and used tissues, covering the living room floor. Cockroaches crawled along the floor, across the table, up the walls and over S.O.'s toys. Mother and Father told the DCS workers they did not believe this presented a safety concern.

¶6 Eventually, the case manager and counselor discussed family-preservation services with Mother and Father. But Father declined the services because he did not feel they were necessary. Although the case manager and counselor tried to explain that S.O.'s doctor recommended the services, the parents still refused to participate.

¶7 In September 2013, DCS took S.O. into custody on allegations of abuse and neglect by Mother and Father. A few months later, the superior court found S.O. dependent as to Mother and Father, and approved a case plan of family reunification concurrent with severance and adoption.

¶8 Shortly after S.O. was taken into custody, she had a feeding tube installed to treat her failure to thrive. Because S.O. continued to suffer from an oral aversion (i.e., an aversion to having food placed on or near her mouth), she relied on a feeding tube for nutrition.

¶9 R.O. was born June 4, 2014. She was diagnosed with the same kidney condition as her sister in each kidney. Shortly after her birth, R.O. suffered from a severe urinary tract infection as a result of her kidney condition. Doctors also diagnosed her as immunocompromised. DCS took her into custody directly from the hospital and immediately filed a dependency petition, alleging Mother was "unable to provide her child with proper and effective parental care and control" and Father was "unable or unwilling to provide proper and effective parental care and control for the child." The superior court found R.O. dependent as to Mother and Father and approved a case plan for family reunification concurrent with severance and adoption.

¶10 DCS provided Mother and Father with the following services: Parent aide, case aide, case management, transportation, psychological evaluation, counseling, bonding evaluations, couples counseling and in-home services. On April 21, 2015, DCS moved to terminate Mother and Father's parental relationships with S.O. On January 25, 2016, it sought to terminate the same with respect to R.O.

¶11 The severance hearing for each child began in February 2016. After hearing the evidence, the superior court terminated Mother's parental rights on the grounds of mental illness under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (2016) and 15 months' time-in-care under A.R.S. § 8-533(B)(8)(c).[3] The court terminated Father's rights on grounds of 15 months' time-in-care under A.R.S. § 8-533(B)(8)(c). Mother and Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, A.R.S. §§ 8-235(A) (2016), 12-2101 (2016) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### A. Legal Principles.

¶12 The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶13 We review a termination order for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *See Jesus M.*, 203 Ariz. at 280, ¶ 4. On appeal, this court will affirm a severance order unless it is clearly erroneous. *Id.*

---

[3] Absent material revision after the relevant date, we cite a statute's current version.

¶14         As relevant here, parental rights may be terminated on time-in-care grounds if:

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order . . . , the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c).

¶15         The circumstances that cause the child's out-of-home placement are "those circumstances existing at the time of the severance rather than at the time of the initial dependency petition." *Maricopa County Juv. Action No. JS-8441*, 175 Ariz. 463, 468 (App. 1993).

## B.    Mother's Appeal.

¶16         Mother argues only that there is no clear and convincing evidence to support the court's finding that she is unable to exercise proper and effective parental care and control in the near future.

¶17         To the contrary, reasonable evidence supports the superior court's finding that Mother failed to remedy the circumstances that caused each child's out-of-home placement and is unable to exercise proper and effective care and control in the near future. Dr. James Thal, who conducted a psychological evaluation of Mother in January 2014, measured her intelligence in the low average to borderline range. Given these findings, Dr. Thal concluded that Mother would face significant challenges in learning the basics of how to care for a normally developing child, and simply could not learn and retain the complex skills necessary to care for a medically fragile child. Importantly, Dr. Thal also found that Mother accepted no responsibility for S.O.'s being undersized at one year of age.

¶18         Similarly, Debra Fonville-Williams, the DCS case manager, testified that Mother was unable to care for the children. She reported Mother was easily distracted and had a hard time remembering things. Indeed, according to Ms. Fonville-Williams, during supervised visits, Father continuously had to remind Mother to care for the children's basic needs. Furthermore, as Dr. Thal testified, Mother has a "minimal[]" support system and is "very dependent" on Father.

¶19        Based on this record, sufficient evidence supported the superior court's finding that Mother was unable to remedy the circumstances that led to her children's out-of-home placement and will not be capable of exercising proper and effective parental care and control in the near future.[4]

## C.    Father's Appeal.

¶20        Father likewise argues insufficient evidence supported the decision to terminate his rights based on 15 months' time-in-care. He contends he demonstrated he is capable of exercising proper and effective parental care and control by participating in the services provided by DCS, maintaining a residence and employment, and devising a plan for the care of his children while he works and attends class.

¶21        As with Mother, reasonable evidence supports the superior court's finding that Father failed to remedy the circumstances that caused the children's out-of-home placement. Throughout his psychological evaluation with Dr. Thal in January 2014, Father maintained that he and Mother had done nothing to cause S.O.'s malnourished condition, initially stating she was "just a runt," and later blaming S.O.'s weight on her kidney condition. In fact, Father believed that their pediatrician only reported S.O. to DCS because she did not like Mother and Father. Significantly, Father expressed no reservations about Mother's ability to parent. Indeed, he affirmatively endorsed her skills. Accordingly, Dr. Thal came away with two chief concerns about Father's ability to parent: Father refused to take any responsibility for S.O.'s failure to thrive and Father believed Mother could provide adequate care of the children.

¶22        Before the severance trial began, Father had not acknowledged Mother's limitations as a caregiver, nor had he indicated any intent to parent the children without real assistance from Mother. Further, Father still had not recognized the reasons S.O. was taken into care. Given Mother's documented limitations and general dependence on Father, any parental care plan that involved Mother would require Father to provide the special care his children need while at the same time monitoring Mother. Accordingly, although Father may have made some effort and improvement, Dr. Thal concluded Father had not presented a suitable plan for caring for the children. Similarly, the DCS case manager testified Father

---

[4]     We may affirm the order of termination on any one of the statutory grounds on which the superior court ordered severance. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

was incapable of parenting the children while also monitoring Mother. And even if Father had presented a plan to parent without Mother, the case manager noted Father had not shown he could care for the children as a single parent.

**¶23** Based on this record, sufficient evidence supported the superior court's finding that Father was unable to remedy the circumstances that led to his children's out-of-home placement.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the superior court's order severing Mother and Father's parental relationships with S.O. and R.O.[5]



AMY M. WOOD • Clerk of the Court
FILED:          JT

---

[5] Neither Mother nor Father argue that termination is not in the children's best interests.