NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

THOMAS M.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, E.M.,
*Appellees.*

No. 1 CA-JV 16-0310
FILED 2-2-2017

Appeal from the Superior Court in Maricopa County
No. JD528289
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

---

**J O H N S E N**, Judge:

**¶1**        Thomas M. ("Father") appeals the superior court's order terminating his parental rights to his son, E.M.  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother tested positive for marijuana and barbiturates while she was pregnant with E.M. and again for barbiturates when he was born in October 2014.[1]   As a result, a Substance Exposed Newborns Safe Environment Program ("SENSE") was put in place before she and E.M. left the hospital together.

**¶3**        Mother began drug screening in October 2014, and Father began drug screening a few weeks later.  Within a short time, Mother had submitted at least one diluted sample for urinalysis, and Father had tested positive for methamphetamine.  When the SENSE case manager confronted Mother and Father about the tests in November 2014 at the family residence, Mother became erratic and uncooperative, and Father hit himself in the head several times.  Mother and Father eventually barricaded themselves in their bedroom with E.M. and Mother's two older children, ultimately requiring police intervention.

**¶4**        To try to avoid removing the child from Mother and Father's custody, the Department of Child Safety ("DCS") located a safety monitor and put a safety plan into place.  Under the terms of that plan, Father was to leave the family residence and avoid all contact with E.M., unless the case manager gave permission.  Mother, however, immediately allowed Father to be with E.M. without proper supervision.  As a result, DCS removed E.M.

---

[1]        We view the facts and draw all reasonable inferences in the light most favorable to upholding the superior court's order.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

on November 22, 2014, and the court subsequently declared E.M. dependent as to Mother and Father.

¶5        After taking E.M. into care, DCS recommended substance abuse services to Father. Father underwent a substance abuse assessment in November 2014, at which he admitted a history of drug use, but denied using methamphetamine at any point in the previous year, despite having tested positive that same month. As a result, TERROS was unable to recommend Father for treatment at that time.

¶6        Additionally, DCS required Father to submit to random urinalysis testing. From November 7, 2014 to March 31, 2016, Father was scheduled to take 84 drug tests. Of the 84 scheduled tests, Father took 46, missed 38 and tested positive for methamphetamine once in July 2015. After March 2016, Father did not take another test until June 2016.

¶7        DCS also recommended services to help Father manage his anger. Father underwent a psychological evaluation and participated in individual counseling, which focused on anger management. But in March 2016, Father was arrested after he allegedly choked Mother in their apartment. As a result of that incident, a court issued Mother an order of protection against Father on March 7, 2016. Under its terms, Father is not to contact Mother or E.M. for one year. In another incident, in May 2016, Father left a threatening voicemail for his DCS case manager. In that voicemail, the case manager testified that Father told her, "payback is a bitch," and "everyone involved in this case is going to get theirs."

¶8        In all, DCS provided Father with substance abuse treatment and education, random urinalysis testing, a psychological consultation and evaluation including additional services as recommended, parenting classes, parent-aide education, supervised visitation and transportation services.

¶9        The trial on DCS's motion to sever Father and Mother's parental rights took place in June 2016.[2] After hearing the evidence, the superior court terminated Father's parental rights on grounds of prolonged substance abuse under Arizona Revised Statutes ("A.R.S.") section 8-

---

[2]        Mother's parental rights were terminated after she waived her right to contest the motion for severance. She is not a party to this appeal.

533(B)(3) (2017) and 15 months' time-in-care under A.R.S. § 8-533(B)(8)(c).[3] Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) (2017), 12-2101 (2017) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶10**        The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B). *Id.* at 249, ¶ 12. Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶11**        We review a termination order for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court is in the best position to "weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶12**        As relevant here, parental rights may be terminated if:

> [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order . . . , the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c). For purposes of the statute, the circumstances that cause the child's out-of-home placement are "those circumstances existing at the time of the severance rather than at the time of the initial dependency petition." *Maricopa County Juv. Action No. JS-8441*, 175 Ariz. 463, 468 (App. 1993).

---

[3]        Absent material revision after the relevant date, we cite a statute's current version.

¶13 Father argues he has remedied the circumstances that brought E.M. into care and has established he is capable of safely parenting E.M. in the near future.

¶14 Contrary to Father's arguments, reasonable evidence supports the superior court's findings that Father failed to remedy the circumstances that caused E.M.'s out-of-home placement and will not be capable of exercising proper and effective parental care and control in the near future. As the DCS case manager testified, Father has been unable to show a lengthy period of sobriety after testing positive for methamphetamine in November 2014. Father drug tested only sporadically between November 2014 and March 2016, testing positive for methamphetamine in July 2015, and did not test again until June 2016. Moreover, despite two positive tests, Father denied using methamphetamine throughout the case.

¶15 Father also failed to demonstrate he can manage his anger. In March 2016, the court issued Mother an order of protection against Father based on allegations of domestic violence. Just a short time later, in May 2016, Father left a threatening voicemail for the case manager.

¶16 In addition to these concerns, the case manager testified Father was unable to provide pay stubs demonstrating stable employment or show proof of stable housing. Based on this record, sufficient evidence supported the superior court's finding that Father was unable to remedy the circumstances that led to E.M.'s out-of-home placement and will not be capable of exercising proper and effective parental care and control in the near future.[4]

¶17 Father also argues that termination of his parental rights is not in the child's best interests. *See* A.R.S. § 8-533(B). A best-interests finding may be supported by evidence of an affirmative benefit to the child from severance or a detriment to the child if the relationship were to continue. *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 557 (App. 1997). Being available for adoption is an affirmative benefit that can support a finding that termination is in a child's best interests. *See Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Whether severance is in a child's best interests is a question of fact, and we view the evidence and

---

[4] We may affirm the order of termination on any one of the statutory grounds on which the superior court ordered severance. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

draw all reasonable inferences in favor of supporting the superior court's findings. *Jesus M.*, 203 Ariz. at 282, ¶ 13.

**¶18** Father argues that severance is not in E.M.'s best interests because Father's relationship with E.M. is worth saving. Notwithstanding this contention, the court heard evidence that an adoptive home—capable of meeting E.M.'s physical, social, educational, medical, psychological and emotional needs—had been identified. The case manager testified, and the child's guardian ad litem agreed, that E.M. would benefit from severance and adoption because it would provide him with permanency and stability. Accordingly, sufficient evidence supported the court's determination that termination of Father's parental rights would be in E.M.'s best interests.

## CONCLUSION

**¶19** For the foregoing reasons, we affirm the superior court's order severing Father's parental rights with respect to E.M.



AMY M. WOOD • Clerk of the Court
FILED: AA