NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.C.

No. 1 CA-JV 23-0191
FILED 05-07-2024

Appeal from the Superior Court in Maricopa County
JD534783
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Mesa
By Ingeet P. Pandya
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which
Judge Kent E. Cattani and Judge D. Steven Williams joined.

**K I L E Y**, Judge:

¶1          Sydney C. ("Mother") appeals the termination of her parental rights to her daughter L.C., asserting that the juvenile court abused its discretion by determining that termination was in L.C.'s best interests. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Viewed in the requisite "light most favorable to sustaining the juvenile court's order," *In re O.M.*, 254 Ariz. 543, 544, ¶ 3 (App. 2023) (citation omitted), the evidence shows that Mother used illegal substances during her pregnancy, testing positive for methamphetamine during a prenatal medical appointment in September 2021. L.C. was born substance-exposed in March 2022. During the ensuing investigation by the Department of Child Safety ("DCS"), Mother admitted to using amphetamine and fentanyl while pregnant.

¶3          After her birth, L.C. was treated in the neonatal intensive care unit while "experiencing withdrawals due to the fentanyl." Hospital staff reported a concern that Mother was "vaping or using substances" while visiting L.C. because she would enter a room and "close the door" and "all curtains," after which staff would notice "an odor in the room."

¶4          DCS removed L.C. from Mother's care due to her admitted substance abuse as well as concerns about her mental health and ability to provide for the child's needs. Unable to establish the child's paternity, DCS temporarily placed L.C. with her maternal grandmother ("Grandmother") upon her release from the hospital in April 2022.

¶5          DCS filed a dependency petition alleging that L.C. was dependent as to both Mother and her unidentified father. At a hearing in June 2022, Mother entered a no contest plea, and the court found L.C. dependent.

¶6          Mother underwent drug testing at DCS's request in May 2022; the results were positive for methamphetamine, fentanyl, amphetamine, and methadone. Mother refused to undergo further testing as requested.

¶7          DCS offered Mother supervised visits with L.C. and referred her to both a parenting skills program and substance abuse and mental health counseling through Terros. Although Mother initially participated in the parenting skills program, she did not successfully complete it. Mother declined DCS's offer of services through Terros because she self-referred for treatment through Valle del Sol, but she did not successfully complete the Valle del Sol program. Mother participated in a "detox" program

through Copper Springs East in October 2022, and she subsequently self-referred to Lifewell Behavioral Health for substance abuse treatment. After only two weeks, however, Mother left Lifewell against medical advice and without completing any of her goals.

¶8            In January 2023, Mother submitted to a substance abuse test for the first time since the previous May; the results were positive for methamphetamine, fentanyl, and methadone. After Mother expressed interest in substance abuse and mental health counseling, DCS re-referred her to Terros. After completing an intake assessment with Terros in May 2023, Mother exhibited only "minimal engagement," with multiple "no shows" and "missed" sessions.

¶9            In February 2023, DCS changed the case plan to severance and adoption due to Mother's continued substance abuse. DCS then moved to terminate Mother's parental rights in March 2023, alleging substance abuse and out-of-home placement grounds. *See* A.R.S. § 8-533(B)(3), (8)(a)-(b). Mother contested the termination allegations but failed to appear at the termination hearing in May 2023. The court found that Mother waived her right to contest the termination and terminated her parental rights.

¶10           Mother then moved to set aside the termination order, explaining that she failed to appear at the May 2023 hearing because she was attending a Terros class at the time. Finding that Mother established good cause for her non-appearance, the court granted Mother's motion to set aside the termination order.

¶11           At a subsequent termination hearing in September 2023, the DCS case manager testified that Mother disclosed that she became addicted to prescription painkillers as a result of medical treatment she received as a teenager, started using methamphetamine in her early 20's, and began using fentanyl three years ago. The case manager testified that DCS offered Mother various services to address her substance abuse, but Mother failed to consistently engage in those services. She testified that when Mother began participating in substance abuse testing after the court set aside the original termination order, she tested positive for fentanyl and methamphetamine on August 23, 2023. After that, the case manager acknowledged, Mother had no positive test results (although some of Mother's test specimens were diluted). Nonetheless, the case manager testified, Mother's "recent sobriety . . . is not enough to demonstrate that [she] will be able to maintain that sobriety . . . moving forward."

¶12 The DCS case manager further testified that supervised visitation was the only service in which Mother consistently engaged. Mother had trouble staying awake during some visits with L.C., however, giving cause for further doubt about her ability to safely parent the child.

¶13 The case manager testified that Grandmother was "taking care of all [L.C.'s] needs" and wanted to adopt the child. Adoption would be in L.C.'s best interests, she stated, because it would provide her permanency in a loving home.

¶14 Mother acknowledged her inconsistent participation in services but testified that, at the time, she "wasn't in the right head frame" due to "extenuating circumstances." She testified that she now is sober and has a job, a place to live, and a car, so she "can do all the things that [the court is] asking [her] to do." All she wanted, she testified, was "more time" to demonstrate her stability and sobriety. She further testified that she asked Grandmother to be L.C.'s guardian but that Grandmother "said no to that."

¶15 On cross-examination, Mother admitted that she had been sober for less than one month and further admitted that this relatively brief period was her "longest period of sobriety" in the last five years.

¶16 After the hearing, the court issued a ruling in which it found grounds to terminate Mother's parental rights under A.R.S. § 8-533(B)(3), determining that due to her "history of chronic abuse of dangerous drugs," she was "unable to discharge parental responsibilities" or "provid[e] safe and reliable care" for L.C. The court also found grounds to terminate under A.R.S. § 8-533(B)(8)(a)-(b), determining that despite DCS's "diligent efforts to provide appropriate reunification services," Mother failed to consistently participate in services and "substantially neglected or willfully refused to remedy the circumstances that gave rise to [L.C.'s] out-of-home placement."

¶17 The court terminated Mother's rights to L.C., finding that termination was in the child's best interests because she resided with Grandmother, with whom she was "well-bonded," Grandmother was meeting her "physical, emotional, and medical needs," and her proposed adoption by Grandmother would provide her with "permanency and stability."

¶18 Mother timely appealed. We have jurisdiction under A.R.S. § 8-235(A).

4

**DISCUSSION**

**¶19**        A parent's right to custody and control of her child, though fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). The parental relationship may be terminated if the juvenile court finds, by clear and convincing evidence, at least one statutory ground for termination under A.R.S. § 8-533(B) and further finds, by a preponderance of the evidence, that termination is in the child's best interests. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 13 (2022).

**¶20**        Mother argues that the court abused its discretion in terminating her parental rights to L.C. She does not challenge the court's finding of statutory grounds for termination, so we need not address those issues. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (noting that failure to develop argument in opening brief results in waiver). Instead, she argues that the court abused its discretion by "failing to consider the totality of the circumstances" in finding that termination was in L.C.'s best interests.

**¶21**        In determining a child's best interests, the court "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). The court may find that a child would benefit from termination if an adoption plan is in place or, at a minimum, that adoption is likely, *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370-71, ¶ 22 (App. 2018), and that the child "would benefit psychologically from the stability an adoption would provide," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Conversely, the court may find that a child would be harmed by the continuation of the parent-child relationship if it would cause "negative and psychologically harmful interactions" with the child, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 6, ¶ 21 (2016), or if a parent's unfitness remains unremedied and "detrimentally affects the child's well-being," *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989). The "foremost concern" in the best interests determination is always the "child's interest in stability and security." *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 583, ¶ 27 (2021) (citation omitted).

**¶22**        We "accept the juvenile court's findings of fact if reasonable evidence and inferences support them," *Demetrius L.*, 239 Ariz. at 3, ¶ 9, and

we will affirm the court's legal conclusions unless clearly erroneous, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 480-81, ¶ 31 (2023). We will reverse a termination order only for "an abuse of discretion or clearly erroneous findings of fact, or upon a determination that, as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *Titus S.*, 244 Ariz. at 369, ¶ 15 (citation omitted).

¶23        Asserting that she is "a first-time mother" who simply wanted "additional time to demonstrate sobriety since obtaining stability in housing, employment, and transportation," Mother argues that "the record did not demonstrate that the juvenile court took into consideration" all relevant evidence in determining L.C.'s best interests. In its best interests analysis, she asserts, the court failed to consider her "rehabilitation efforts," her "consistent and positive visits with L.C.," and her "bond with L.C."

¶24        The record does not support Mother's contention that the court failed to consider her rehabilitation efforts. On the contrary, the court's termination order discusses Mother's substance abuse and treatment history at considerable length. After reviewing this history in detail, the court found that Mother "has been using illegal substances since she was approximately 15 years old," DCS referred her for substance abuse services on numerous occasions, and Mother "failed to consistently participate in" those services. Although the court acknowledged (and commended) Mother's recent efforts to maintain sobriety, the court found that Mother had not demonstrated an ability to "maintain sobriety for any prolonged period." Far from disregarding Mother's rehabilitation efforts, the court closely reviewed them and found them insufficient to outweigh L.C.'s interest in the stability that termination and adoption would provide her. Such a determination was within the court's discretion. *See Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016) ("[A] child's interests in permanency must prevail over a parent's uncertain battle with drugs."); *see also Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) (noting that parent's "successful efforts at rehabilitation in the eight months prior to the severance hearing[,] . . . while commendable, were 'too little, too late'").

¶25        Nor does the record support Mother's claim that the court disregarded her love for L.C. in determining L.C.'s best interests. The court expressly recognized that Mother regularly exercised her supervised parenting time but further found that she did not engage in the other services DCS offered to her "to address the behaviors" that created "an unsafe environment" for the child in the first place. The court found, in

other words, that Mother's demonstrated commitment to spending time with L.C. did not outweigh her demonstrated *lack of* commitment to participating in the services necessary to appropriately parent her. Mother's argument that the court gave insufficient weight to her positive relationship with L.C. amounts to a request that we reweigh the evidence, which we will not do. *See Jennifer S.*, 240 Ariz. at 286-87, ¶ 16 (noting that because the juvenile court is "in the best position to weigh the evidence," "we will not reweigh the evidence in our review") (citation omitted).

¶26         Finally, Mother argues that the court failed to "acknowledge the harmful environment [she] experienced as a child in Grandmother's home, including physical and emotional abuse by Grandmother." Citing non-specific "concern[s]" about "Grandmother's mental health," Mother suggests that termination risks exposing L.C. to mistreatment at Grandmother's hands.

¶27         But Mother never testified at the hearing that Grandmother was abusive. Although she stated that she and Grandmother "always had a really rocky relationship" and "have a hard time communicating," she admitted that she and Grandmother "play equal parts in that," explaining that they "both are kind of hotheaded." At no point in her testimony did she express fear for L.C.'s safety in Grandmother's care. On the contrary, she expressly agreed that L.C. "is safe with her" and even testified that she had asked Grandmother to serve as L.C.'s guardian. By failing to present her arguments about Grandmother's purportedly abusive nature at trial, Mother has waived them on appeal. *See In re MH2009-002120*, 225 Ariz. 284, 287, ¶ 7 (App. 2010) (holding that a party that does not "bring [a] concern to the attention of opposing counsel or the superior court" has "waived the right to present it" on appeal).

¶28         Noting that she requested a guardianship for L.C. "to provide her additional time to engage in services," Mother complains that "DCS ended its guardianship inquiry based on [Grandmother's] unwillingness to be L.C.'s guardian and wanting to adopt L.C." To the extent this statement is intended to suggest that the court should have ordered a guardianship in lieu of termination, Mother is not entitled to relief. She never requested a guardianship under A.R.S. § 8-872, and so the juvenile court lacked authority to order one. *See Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480, ¶ 14 (App. 2014) (holding that juvenile court cannot initiate a guardianship "in the absence of a statutorily compliant motion by a party to the proceedings").

**¶29** The DCS case manager testified that termination would be in L.C.'s best interests because it would free her for adoption by Grandmother. *See Maricopa Cnty. Juv. Action No. JS-8441*, 175 Ariz. 463, 469 (App. 1993) ("The benefit of severance to the child is that which the legislature intended: freedom to be adopted into a stable and nurturing home."). Because record evidence supports the juvenile court's determination that termination would be in L.C.'s best interests, the court did not abuse its discretion in terminating Mother's parental rights. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

## CONCLUSION

**¶30** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: TM