SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| KENT K. and SHERRY K., | ) | Arizona Supreme Court |
| | ) | No. CV-04-0209-PR |
| Appellants, | ) | |
| | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-JV 03-0059 |
| BOBBY M. and LEEH M., | ) | |
| | ) | Pima County |
| Appellees. | ) | Superior Court |
| | ) | No. S-16021999 |
| | ) | |
| _____ | ) | **O P I N I O N** |

Appeal from the Superior Court of Pima County
No. S-16021999
The Honorable Michael O. Miller
**AFFIRMED IN PART; REVERSED IN PART; REMANDED**

_____

Memorandum Decision of the Court of Appeals, Division Two
No. 2 CA-JV 03-0059
**VACATED IN PART**

_____

LAW OFFICE OF PATRICIA A. TAYLOR                          Tucson
    By   Patricia A. Taylor
Attorney for Kent K. and Sherry K.

RANDI E. ALEXANDER, Attorney at Law                       Tucson
    By   Randi E. Alexander
Attorney for Bobby M.

_____

M c G R E G O R, Vice Chief Justice

¶1      Arizona statutes governing the termination of the
parent-child relationship require the trial court to make two
findings before ordering severance of parental rights.  The
court first must find the existence of one of several enumerated
statutory grounds for termination, Ariz. Rev. Stat. (A.R.S.)

section 8-533.B (Supp. 2004), and that clear and convincing evidence establishes the grounds for termination. A.R.S. § 8-537.B (Supp. 2004). Next, the court must determine that termination of the parent-child relationship is in the best interests of the child. A.R.S. § 8-533.B. We granted review to determine whether the clear and convincing evidence standard also applies to measure the evidence presented to establish the best interests of the child.

## I.

¶2 Kent K. and Sherry K. (appellants) are the maternal grandparents and legal guardians of Leeh M., the child of their sixteen-year-old daughter, Barbara, and eighteen-year-old Bobby M. Barbara and Bobby M. married in March 1996, but divorced thirteen months later. Throughout their marriage, Barbara and Bobby M. engaged in a pattern of fighting and separation,[1] and both exhibited immaturity and an inability to cope with the responsibilities of parenting. Ultimately, appellants obtained full-time physical custody of Leeh and, in July 2000, became Leeh's legal guardians. Bobby M. initially contested the guardianship but discontinued his efforts after the first hearing because he could not afford an attorney.

¶3 Following the guardianship hearing, Bobby M. was

---

[1] These actions led to several allegations of domestic violence against Bobby M. and to his conviction in January 1997.

incarcerated for violating probation and remained incarcerated from October 2000 to October 2002. During that time and afterward, Bobby M. failed to maintain a relationship with Leeh. While in prison, however, Bobby M. took several steps to better himself by completing a parenting class and obtaining substance abuse treatment, and he wrote several letters to both Barbara and Leeh expressing his desire to reunite their family. These letters could not be delivered to Leeh because appellants had obtained a restraining order against Bobby M. prohibiting him from contacting Leeh.

¶4    In April 2002, after nearly two years of caring for Leeh as her legal guardians, appellants instituted this action to terminate Bobby M.'s parental rights to Leeh.[2] *See* A.R.S. § 8-533.A ("Any person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative, . . . may file a petition for the termination of the parent-child relationship . . . ."). Following a severance hearing, the trial court found that appellants proved abandonment,[3] a statutory ground for termination of parental

---

[2]    According to the record before this court, Barbara had consented to severance of her parental rights upon the condition that Bobby M.'s parental rights also be terminated.

[3]    "Abandonment" means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support

3

rights, by clear and convincing evidence.  The court also found, however, that appellants had not presented clear and convincing evidence that termination of Bobby M.'s parental rights would be in Leeh's best interests and, for that reason, refused to order severance.

¶5      On appeal, appellants claimed that the trial court erred by applying the clear and convincing standard of proof to its inquiry into the best interests of the child.[4]  The court of appeals affirmed the juvenile court's ruling, holding that "the moving party in any action to terminate parental rights must prove all elements required for severance, including the best interests of the child, by clear and convincing evidence."  *Kent K. v. Bobby M.*, 2 CA-JV 2003-0059, slip op. at ¶ 9 (Ariz. App. 2004) (mem. decision).

¶6      We granted review to clarify the standard of proof required for determining the best interests of the child in a

_____

and communicate with the child.  Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531.1 (Supp. 2004).

[4]  Appellants raised three other issues at the court of appeals: (1) the juvenile court abused its discretion by "disregarding the great weight of the evidence"; (2) the juvenile court abused its discretion by disregarding the opinions of an expert witness; and (3) the length of time for trying the case was unreasonable.  They did not ask this court to review any of these issues.

4

parental severance proceeding. We exercise jurisdiction pursuant to Article 6, Section 5.3 of the Arizona Constitution and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

**II.**

¶7 Arizona statutes address both the grounds and the standard of proof required to sever parental rights. A.R.S. §§ 8-533.B, -537.B. Section 8-533.B defines the grounds that can be used to justify termination and requires that a court, "in considering any of the following grounds [for termination], . . . shall also consider the best interests of the child." A separate statute establishes the procedures for hearing termination cases and directs that "[t]he court's or jury's findings with respect to grounds for termination shall be based upon clear and convincing evidence under the rules applicable and adhering to the trial of civil causes." A.R.S. § 8-537.B.[5] The statute thus clearly requires that the party seeking termination establish the grounds for termination by clear and convincing evidence.

¶8 The issue presented by this case is whether the court, in determining whether termination is in the best interests of

---

[5] The version of A.R.S. § 8-537.B in effect at the time of the severance proceeding in this case provided only for a judge to make findings with respect to the grounds for termination. A.R.S. § 8-537.B (1999). The statute was amended in 2003 to allow either a judge or a jury to make these findings. *See* 2003 Ariz. Sess. Laws, 2nd Spec. Sess., ch. 6, § 9. The current version will sunset on January 1, 2007.

the child, should again apply a clear and convincing standard or should apply a preponderance of the evidence standard. The court of appeals interpreted section 8-537.B as requiring that both the statutory grounds for termination and the finding that termination is in the best interests of the child must be established by clear and convincing evidence. We disagree.[6]

¶9        Our prior decisions have never directly considered this issue. In *Michael J. v. Ariz. Department of Economic Security*, 196 Ariz. 246, 995 P.2d 682 (2000), we stated that "[t]o justify termination of the parent-child relationship, the trial court must find, by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533, and also that termination is in the best interest of the child." *Id.* at 249 ¶ 12, 995 P.2d at 685. Appellants argue that this language clearly supports the conclusion that "Arizona breaks the inquiry into two parts," requiring separate standards of proof. *See Kent K.*, 2 CA-JV 2003-0059, slip op. at ¶ 6. In contrast, the court of appeals concluded that the passage supports the conclusion that best interests must be proved by clear and convincing evidence, because we did not state that a separate standard of proof applies. *Id.* at ¶ 7.

---

[6]    We review questions of statutory interpretation *de novo*. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. ___, ___ ¶ 8, 105 P.3d 1163, 1166 (2005).

¶10     Both approaches read too much into our *Michael J.* opinion.  The contested language merely restated the language of the statute.  Indeed, we explicitly stated that we were not addressing the finding of best interests of the child, as the appellant had not challenged that finding.  *Michael J.*, 196 Ariz. at 249 ¶ 13, 995 P.2d at 685.  Thus, we had no occasion to consider the proper evidentiary standard to be applied to the best interests inquiry.

¶11     Nor have we ever directly considered the question of the constitutionally required minimum standard of proof in a best interests inquiry.  In *Maricopa County Juvenile Action No. JS-500274*, we held that the "best interests of the child are a necessary, but not exclusively sufficient, condition for an order of termination."  167 Ariz. 1, 5, 804 P.2d 730, 734 (1990).  Because severance cases involve fundamental rights, we stated, these "constitutional rights can be overridden only by the combined elements of statutorily defined improper behavior by the parent and the child's best interests."  *Id.*

¶12     The court of appeals has on occasion cited *JS-500274* for the proposition that the best interests of the child must be proved by clear and convincing evidence.  *See, e.g.*, *Maricopa County Juvenile Action No. JS-9104*, 183 Ariz. 455, 461, 904 P.2d 1279, 1285 (App. 1995) ("The severing court must find by clear and convincing evidence both the statutory elements plus the

best interests of the child."); *Maricopa County Juvenile Action No. JS-8441*, 175 Ariz. 463, 465, 857 P.2d 1317, 1319 (App. 1993) ("A termination order must be supported by clear and convincing evidence establishing a statutory ground and the best interest of the child."). We understand how this misapprehension arose. Our classification of the statutory grounds and best interests as "combined elements" for severance cases could lead one to conclude, as counsel for appellee argued at oral argument, that these are two sides of the same coin. But holding that a particular finding is necessary to satisfy considerations of due process does not involve the same analysis as determining the degree of proof required to justify that finding.

¶13     We therefore now expressly consider, first, the standard of proof required by Arizona's statutes to be applied in a best interests inquiry and, second, whether the standard of proof required by statute satisfies constitutional due process requirements.

### A.

¶14     We interpret statutes to give effect to the legislature's intent. When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation. *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999). If ambiguity exists, however, we determine legislative intent by looking

8

first to the text and context of the statute and then considering its historical background, effects and consequences, and its spirit and purpose. *See People's Choice TV Corp., Inc. v. City of Tucson*, 202 Ariz. 401, 403 ¶ 7, 46 P.3d 412, 414 (2002).

¶15    We note at the outset that section 8-537.B is ambiguous. The statute explicitly establishes the standard of proof to be applied to the "findings with respect to grounds for termination." A.R.S. § 8-537.B. The statute, however, neither expressly defines the term "grounds for termination" nor specifically provides a standard of proof to be applied to the best interests inquiry. Thus, we must interpret this statute to determine what standard of proof the legislature intended to apply to the best interests inquiry.

¶16    Although sections 8-533.B and 8-537.B do not unambiguously establish the standard of proof required to satisfy the best interests inquiry, the statutory language does shed some light on the subject. Section 8-533.B distinguishes between the statutory grounds sufficient to justify the termination of the parent-child relationship on the one hand, and the mandatory consideration of the best interests of the child on the other. The distinction is set up by separate clauses requiring that the trial court first consider "any of the following grounds [for termination]" and then requiring that

the court "also consider the best interests of the child." A.R.S. § 8-533.B. This distinction between grounds for termination and best interests gains importance when read in conjunction with section 8-537, which requires clear and convincing evidence only "with respect to grounds for termination." Thus, the specific reference only to grounds for termination in section 8-537, read together with the distinction in section 8-533 between statutory grounds for termination and the best interests inquiry, evinces an intent on the part of the legislature to apply the standard of proof expressed in section 8-537 only to the grounds for termination and not to the consideration of best interests.

¶17 The historical development of these statutes buttresses this conclusion. *See Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990) ("Legislative intent often can be discovered by examining the development of a particular statute."). As originally enacted, Arizona's parental-rights termination statute did not mention the best interests of the child. 1970 Ariz. Sess. Laws, ch. 153, § 2 ("Any person or agency that has a legitimate interest in the welfare of a child may file a petition for the termination of the parent-child relationship if one or more of the following grounds exist."). To sever parental rights under this statute, the court needed only to find by a preponderance of the evidence one of the

10

enumerated grounds for severance. *See id.* ("The court's findings with respect to grounds for termination shall be based upon a preponderance of the evidence under the rules applicable and adhering to the trial of civil causes.").

¶18      In 1979, the legislature amended the termination statute to provide as follows:

> Evidence sufficient to justify the termination of the parent-child relationship shall include any one of the following, and in considering any of the following grounds, the court *may* also consider the needs of the child.

1979 Ariz. Sess. Laws, ch. 86, § 1 (emphasis added). The 1979 amendment clearly established the demarcation between grounds for termination under the statute and best interests of the child by including the needs of the child as a permissive, rather than a mandatory, consideration for the court. Section 8-537.B, including its preponderance standard, remained unchanged until 1983.

¶19      Responding to the United States Supreme Court's holding in *Santosky v. Kramer*, 455 U.S. 745 (1982), that "due process requires that the State support its allegations [in parental termination proceedings] by at least clear and convincing evidence," *id.* at 748, and this court's acknowledgement of that rule in *Pima County Juvenile Action No. S-919*, 132 Ariz. 377, 646 P.2d 262 (1982), the legislature amended A.R.S. § 8-537.B in 1983 to replace the preponderance of

11

the evidence standard with a clear and convincing evidence standard. 1983 Ariz. Sess. Laws, ch. 176, § 3. The legislature made no other changes at that time to the relevant sections of the termination statutes. Thus, as the statute stood following the 1983 amendment, an Arizona court could terminate parental rights simply by finding at least one statutory ground listed in section 8-533.B by clear and convincing evidence. After finding that statutory ground, the court was permitted, but not required, to consider the needs of the child in making the final termination decision. We think it unlikely that the legislature intended to require clear and convincing evidence of a finding that it left to the discretion of the trial court to consider in the first instance.

¶20 The statute reached its current form in 1994, when the legislature amended section 8-533.B to make the best interests inquiry mandatory. 1994 Ariz. Sess. Laws, ch. 116, § 4 ("[I]n considering any of the following grounds, the court *shall* also consider the best interests of the child.") (emphasis added).

¶21 Although Bobby M. asserts that this transition from permissive to mandatory consideration of the best interests of the child indicates that the legislature intended to make best interests one of the "grounds" for termination of parental rights, the legislature did not make any other textual changes that would support such a conclusion. In making the best

12

interests consideration mandatory, the legislature left intact the remaining language of section 8-533.B, thereby continuing to distinguish statutory grounds for termination from the best interests inquiry. Nor did the legislature alter section 8-537.B to apply a heightened evidentiary standard to anything beyond proof of the statutory grounds for termination. Had the legislature desired to apply the clear and convincing evidence standard to the finding of best interests of the child, it easily could have done so.

¶22 For the foregoing reasons, we conclude that Arizona's statutes require that the party seeking termination of parental rights establish only the statutory grounds of section 8-533 by clear and convincing evidence and establish the best interests of the child by a preponderance of the evidence.

¶23 This conclusion does not end our analysis, however, as we must also consider whether the Due Process Clause of the Fourteenth Amendment requires that the best interests determination be supported by clear and convincing evidence.

**B.**

¶24 Parents possess a fundamental liberty interest in the care, custody, and management of their children. *Santosky*, 455 U.S. at 753; *Michael J.*, 196 Ariz. at 248 ¶ 11, 995 P.2d at 684. As with other fundamental rights, however, parental rights are not absolute. *Id.* at ¶ 12. A court may order severance of

13

parental rights under certain circumstances, so long as the parents whose rights are to be severed are provided with "fundamentally fair procedures" that satisfy due process requirements. *Santosky*, 455 U.S. at 754. Application of the proper standard of proof in a termination hearing is a critical component of the "fundamentally fair procedures" necessary to satisfy due process.

¶25     As the Supreme Court has noted, "the minimum standard of proof tolerated by the due process requirement reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Id.* at 755 (citing *Addington v. Texas*, 441 U.S. 418 (1979)). The preponderance of the evidence standard requires that the fact-finder determine whether a fact sought to be proved is more probable than not. *See* Black's Law Dictionary 1201 (7th ed. 1999). This standard essentially allocates the risk of error equally between the parties involved. Clear and convincing evidence, in contrast, reflects a heightened standard of proof that indicates that "the thing to be proved is highly probable or reasonably certain." *Id.* at 577. This standard places a heavier burden upon one party to prove its case to a reasonable certainty.

¶26     These two standards of proof allocate the risk of error in the determination of a given fact quite differently and

14

can lead to quite different results. Bobby M. contends that, because of the importance of a parent's interest in a severance proceeding, the Supreme Court's decision in *Santosky* mandates that the party seeking termination of parental rights establish by clear and convincing evidence that severance serves the child's best interests.

¶27        In *Santosky*, the Supreme Court considered a New York statute that created a bifurcated proceeding in which a juvenile court first conducted a fact-finding hearing to determine whether the government had proved statutory grounds of parental unfitness.[7] 455 U.S. at 748. If the court determined that the State had met its burden for proving the parent's unfitness, the court moved to a subsequent dispositional hearing at which it determined what placement would be in the best interests of the child. *Id.*

¶28        On a challenge by the Santoskys to an order terminating their parental rights under the New York statute, the Supreme Court held that the government could sever parental rights only by establishing the grounds for parental unfitness by at least clear and convincing evidence. *Id.* at 769. The Court stated that "such a standard adequately conveys to the factfinder the level of subjective certainty about his factual

---

[7]    In *Santosky*, the State sought termination of parental rights on the statutory ground of "permanent neglect." 455 U.S. at 747.

15

conclusions necessary to satisfy due process." *Id.*

¶29    In determining how the risk of error should be distributed in parental rights termination proceedings, the Court balanced the three factors established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky*, 455 U.S. at 754.  The Court held that in proceedings to sever parental rights, "the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Id.* at 758. Thus, because the preponderance of the evidence standard essentially allocates the risk of error equally between the parents and the state, due process requires a higher standard of proof than preponderance of the evidence.

¶30    Despite its sometimes sweeping language, throughout the *Santosky* opinion the Court made it abundantly clear that its analysis of constitutional due process requirements addressed only the first stage of the New York termination proceedings, the fact-finding hearing.  For example, in describing the private interests affected by the proceeding, the Court acknowledged that both the child and the foster parents shared

16

an interest in the outcome; however, "at the *factfinding stage* . . . the focus emphatically is not on them." *Santosky*, 455 U.S. at 759 (emphasis added). Moreover, at the fact-finding stage, the state may not presume that the child and her parents possess adverse interests. Rather, at the outset of a termination proceeding, parent and child "share a vital interest in preventing erroneous termination of their natural relationship." *Id.* at 760.

¶31 The Court recognized, however, that at the dispositional stage, the government may assume that the interests of the parents and the child diverge. *Id*. Once a court determines that a parent is unfit, the focus shifts to the interests of the child as distinct from those of the parent. The weight of the presumption that the child shares the parent's interest in preserving the family relationship is greatly reduced by the potential harm to the child from maintaining a relationship with an unfit parent. Moreover, the court must consider the state's interest at the dispositional phase: "Any *parens patriae* interest in terminating the natural parents' rights arises only at the dispositional phase, *after* the parents have been found unfit." *Id.* at 767 n.17.

¶32 Arizona's statutory scheme differs slightly from the New York statutes discussed in *Santosky*. Arizona does not explicitly bifurcate its termination proceedings into fact-

17

finding and dispositional stages. Nonetheless, as we have already discussed, A.R.S. § 8-533.B does distinguish between the finding of statutory grounds for termination on the one hand and the consideration of the best interests of the child on the other. Although the court considers the separate inquiries required under section 8-533.B in a single hearing, the two inquiries are comparable to the separate fact-finding and dispositional hearings conducted under the New York statute. Thus, within the context of Arizona's legislative scheme, *Santosky* mandates only that the findings of the statutory grounds for termination be supported by clear and convincing evidence. The opinion does not define the minimum standard of proof required for determining the best interests of the child.

## C.

¶33 We apply the *Mathews* test to determine the standard of proof required for a finding that severance of parental rights is in the best interests of the child. Under *Mathews*, determining the minimum standard of proof required to afford due process involves consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

18

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

¶34 With respect to the private interests at stake, we previously have held that "[s]everance of parental rights necessarily involves the consideration of fundamental, often competing, interests of parent and child." *Michael J.*, 196 Ariz. at 248 ¶ 11, 995 P.2d at 684. Proceedings to sever parental rights involve two private interests. On the one hand, the parent possesses a fundamental liberty interest in the control and care of his or her child. The child, on the other hand, has an interest in a "normal family home." *Santosky*, 455 U.S. at 759; *see also Pima County Juvenile Severance Action No. S-114487*, 179 Ariz. 86, 101, 876 P.2d 1121, 1136 (1994) (finding that in parental severance matters, judges must protect a child's interest in stability and security).

¶35 As the Supreme Court made clear in *Santosky*, until a court finds grounds for termination, parent and child "share a vital interest in preventing erroneous termination of their natural relationship." 455 U.S. at 760. Thus, these interests must be assumed to "coincide to favor use of error-reducing procedures." *Id.* at 761. In a best interests inquiry, however, we can presume that the interests of the parent and child diverge because the court has already found the existence of one

19

of the statutory grounds for termination by clear and convincing evidence. *See* A.R.S. §§ 8-533.B, -537.B.[8] Thus, while a parent already found unfit maintains some interest in the care and custody of his or her child, the court's determination that statutory grounds for severance of parental rights exist substantially reduces the importance of this interest. In considering the best interests of the child, the court must balance this diluted parental interest against the independent and often adverse interests of the child in a safe and stable home life.

¶36    In light of the shifting of the personal interests at stake, we must also consider the second *Mathews* factor: "the risk of erroneous deprivation of private interests resulting from use of a 'fair preponderance' standard and the likelihood that a higher evidentiary standard would reduce that risk." *Santosky*, 455 U.S. at 761. In *Santosky*, the Court found a magnified risk of error in applying the preponderance of the evidence standard during the fact-finding portion of New York's proceedings because the fact-finding focused solely on the parent's conduct, pitting the immense resources of the state against the parent in an attempt to show parental unfitness.

---

[8]    In Arizona, the statutory grounds for termination of parental rights are serious in nature, involving grave misconduct, *see* § 8-533.B.1-2 (abandonment, neglect or willful abuse), or complete abdication of parental responsibilities, §

20

*Id.* at 762-65. Because the focus is solely upon the parent at the fact-finding stage, without a heightened standard, the risk that a fit parent might be found unfit increases. Use of a heightened standard of proof at the fact-finding stage recognizes the severe consequence of an erroneous determination of unfitness: Error at this stage could lead to permanently extinguishing the relationship between a fit parent and his or her child.

¶37 During a best interests inquiry, however, the risk of error and the potential for reducing that risk by raising the standard of proof change dramatically. Unlike the fact-finding proceeding, the best interests inquiry focuses primarily upon the interests of the child, as distinct from those of the parent. In determining the child's best interests, the court must essentially balance the rights of an unfit parent against those of the child. At this stage, the child's interest in obtaining a loving, stable home, or at the very least avoiding a potentially harmful relationship with a parent, deserves at least as much weight as that accorded the interest of the unfit parent in maintaining parental rights. In such cases, in which two interests of relatively equal weight clash, allocating a greater share of the risk of error to one party serves no societal interest. Moreover, requiring proof by clear and

_____

8-533.B.3-10 (mental deficiency, lengthy imprisonment, prolonged

21

convincing evidence that termination of parental rights is in the best interests of the child actually places the risk of an erroneous conclusion as to the *child's best interests* squarely upon the child.

¶38     An example underscores the problem that arises from imposing a clear and convincing evidence standard of proof on the best interests inquiry.  Under a heightened standard of proof, a judge, after finding statutory grounds for termination of parental rights by clear and convincing evidence, might also find upon a preponderance of the evidence that severance of parental rights is in a child's best interests, perhaps because the child would be jeopardized by the continuation of the relationship.  *See JS-500274*, 167 Ariz. at 5, 804 P.2d at 734 (recognizing potential jeopardy as evidence of the best interests of the child).  Under the test proposed by Bobby M., unless the evidence of the child's best interests meets the heightened clear and convincing evidence standard, that judge would be required to leave the child in status quo, despite finding by a preponderance of the evidence that doing so exposes the child to jeopardy.  This result would give too much weight to a parent's interests at a stage at which the court should focus upon what is best for the child.

¶39     Finally, applying the third prong of the *Mathews* test

_____

failure to exercise parental rights or responsibilities).

requires consideration of two state interests at stake in parental rights termination proceedings. The state possesses both "a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." *Santosky*, 455 U.S. at 766. *Santosky* concluded that neither of these state interests was unduly burdened by applying the clear and convincing standard of proof during the fact-finding proceeding. *Id.* at 766-67. First, according to *Santosky*, a heightened standard of proof should not place any substantial fiscal or administrative burden on the state. *Id.* at 767. Second, because the state's *parens patriae* interest in termination does not arise until the statutory grounds for termination have been established, requiring a heightened standard of proof to establish those statutory grounds should not burden the state's *parens patriae* interest. *Id.* at 766-67.

¶40 During the best interests inquiry, however, the court must consider the state's compelling *parens patriae* interest in protecting the child through terminating the natural parent's rights. *See id.* at 767 n.17; *cf. Cochise County Juvenile Action No. 5666-J*, 133 Ariz. 157, 161, 650 P.2d 459, 463 (1982). While shifting to the best interests inquiry presumably does not alter the impact of a heightened standard of proof on the state's fiscal or administrative interests, use of the clear and

23

convincing standard during the best interests inquiry clearly could frustrate the state's "urgent interest in the welfare of the child." *Santosky*, 455 U.S. at 766 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)).

¶41 After balancing these three *Mathews* factors, we conclude that due process does not require imposing the clear and convincing evidence standard for an inquiry into the best interests of the child pursuant to A.R.S. § 8-533.B. Rather, because the best interests inquiry requires a delicate balancing of the child's interests, along with the *parens patriae* interest of the state, against the interests of an unfit parent, we hold that the preponderance of the evidence standard adequately allocates the risk of error between these competing interests.

### III.

¶42 In the case before us, the trial court determined that appellants proved the statutory ground for termination of parental rights, abandonment, by clear and convincing evidence, but held that they had not proved by clear and convincing evidence that severing Bobby M.'s parental rights was in the best interests of the child. The court of appeals affirmed both of these holdings. Because we hold today that preponderance of the evidence, rather than clear and convincing evidence, is the proper standard of proof to be applied to the best interests inquiry, we vacate the portion of the court of appeals'

24

memorandum decision relating to this issue. We affirm that portion of the trial court's judgment concerning the statutory grounds for termination, reverse its finding as to best interests, and remand to the trial court to reconsider its best interests finding, applying the proper standard of proof.[9]

_____
Ruth V. McGregor
Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Rebecca White Berch, Justice

_____
Michael D. Ryan, Justice

_____
Andrew D. Hurwitz, Justice

_____

[9] In a document recently filed with this court, Bobby M. suggests that a material change in circumstance has occurred that may affect the trial court's best interests inquiry. On remand, the court may consider evidence of events that have occurred since its initial decision.