NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

ASAUNTE W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, N.W., *Appellees*.

No. 1 CA-JV 20-0159
FILED 12-1-2020

---

Appeal from the Superior Court in Maricopa County
No. JS519440

The Honorable Jennifer E. Green, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Michael J. Brown and Judge Lawrence F. Winthrop joined.

---

**P E R K I N S**, Judge:

¶1        Asaunte W. ("Mother") appeals the juvenile court's order terminating her parental rights to N.W. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother gave birth to N.W. in May 2018. Mother consumed marijuana during pregnancy, and both tested positive for the drug at N.W.'s birth. The Department of Child Safety ("DCS") intervened by filing an in-home dependency petition alleging that Mother was unable to parent due to substance abuse and mental health concerns. DCS referred Mother to Focused Family to receive individual, substance abuse, and domestic violence counseling. DCS also provided in-home services and implemented a family preservation team, hoping to keep N.W. with Mother. Mother complied with the family preservation team's goals by completing the domestic violence and mental health portions but failing the sobriety component.

¶3        Mother initially struggled to regularly participate in domestic violence counseling. Although her counseling participation eventually improved, Mother could not avoid domestic violence incidents. In September 2018, police responded to an argument between Mother and her boyfriend ("Boyfriend"). No injuries were reported. Three months later, police returned under more troubling circumstances. During another argument with Mother, Boyfriend hurled her cellphone towards the ground, nearly hitting N.W. With a closed fist, Boyfriend also threw a punch, striking Mother in the face and knocking her down. Boyfriend turned his attention back to Mother's cellphone, which he shattered. The arguing continued and escalated. Mother told Boyfriend to leave; instead, he grabbed a knife from a kitchen drawer. Sensing danger and screaming, Mother bolted from the apartment. This incident left Mother with a swollen lip, but she ultimately decided she did not want Boyfriend prosecuted for the incident.

**¶4** Approximately one month later, in January 2019, police responded to another domestic violence call involving Mother and Boyfriend. The incident began as a loud argument but became physical. Boyfriend pushed Mother in the chest, forcing her to the ground. Mother responded by angrily swinging a closed fist at Boyfriend's car, cracking the windshield. Police consequently arrested Mother.

**¶5** Mother had not disclosed her recent domestic violence incidents when DCS held a team decision making meeting ("TDM") on January 28, 2019. Through this TDM, DCS sought to reengage Mother in attending services and ultimately decided to keep N.W. with Mother. When DCS received a hotline tip that Mother's January 2019 domestic violence incident led to her arrest, it held another TDM on February 15, 2019. At the February TDM, DCS determined N.W. could not safely remain with Mother, who left the TDM before it concluded.

**¶6** DCS's concerns for N.W.'s safety intensified while trying to take custody of her. On the day before removal, DCS instructed Mother to place N.W. in daycare. Instead, Mother directed DCS's employee to a smoke-filled apartment supposedly occupied by Mother's friend, an unapproved caretaker. N.W. was "just apparently there for the day" and her diaper bag was "engrained with smoke." The smoke worried DCS because of N.W.'s troubles with chronic congestion and difficulty breathing. Mother's living arrangements also concerned DCS because Boyfriend and N.W.'s maternal great grandmother ("Grandmother") were living in Mother's apartment without DCS's approval.

**¶7** After removing N.W., DCS wanted Mother to reengage in domestic violence counseling. Mother's relationship with Boyfriend and her previous relationship both involved domestic violence incidents, suggesting an ongoing concern. DCS first referred Mother to Terros for counseling, but Mother specifically requested to continue working with Focused Family for such counseling. DCS accommodated that request. Focused Family recommended Mother participate in twenty-six domestic violence group sessions, but Mother completed only five. In October 2019, DCS petitioned to terminate Mother's parental rights on three grounds: substance abuse (marijuana); six months' time in care; and prior termination.

**¶8** The juvenile court held a one-day consolidated dependency and termination hearing in February 2020. By that time, N.W. had been in an out-of-home placement since February 2019. DCS called two case managers, Eileen Grant and Chelsea Jarman to testify. Both case managers

testified to Mother's inconsistent participation in services provided by DCS. Specifically, Mother failed to provide consistent drug testing or regularly attend group counseling sessions. She also struggled to meaningfully participate in parental skill sessions.

¶9        Mother also missed more than half of her supervised visits with N.W. When Jarman tried to schedule supervised visits, Mother sometimes failed to confirm visits or adequately communicate about scheduling. For example, Jarman cancelled one visit in January 2020 because Mother was uncooperative. Mother's supervised visit with N.W. was in Tempe. Two hours before the scheduled visitation time, Mother contacted Jarman to explain that she would be an hour late, despite already being in Tempe. Mother no-showed for another visit with N.W. on the following day.

¶10        Mother also testified. She acknowledged she was involved in domestic violence altercations even after successfully completing domestic violence courses in June or July 2018. She also testified to subsequently not completing domestic violence classes or counseling after the altercations with Boyfriend.

¶11        In April 2020, the juvenile court issued a twenty-two-page minute entry terminating Mother's rights to N.W. on two grounds alleged in the petition. The juvenile court found severance to be in N.W.'s best interest because she is in a placement that is both adoptive and meets all of her needs. Mother timely appealed, challenging only the court's ruling on the statutory grounds.

**DISCUSSION**

¶12        We review the termination of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). This court will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶13        Before irrevocably severing parental rights, "due process requires that the State support its allegations by at least clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982). "[S]uch a standard adequately conveys to the factfinder the level of

subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769.

¶14　　　　To terminate the parent-child relationship, the juvenile court must find, by clear and convincing evidence, parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B). *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶15　　　　The juvenile court may terminate parental rights based on six months' time in care if: (1) the child is under three years old, (2) the child has been in an out-of-home placement for at least six months, (3) DCS "has made a diligent effort to provide appropriate reunification services," and (4) "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement." A.R.S. § 8-533(B)(8)(b). The relevant circumstances are those existing at the time of termination. *See Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

¶16　　　　This termination ground focuses on a parent's efforts to cure the circumstances preventing reunification. *Id.* at 329, ¶ 20. Objectively demonstrated, good faith efforts to comply with reunification services will preclude termination on this basis. *See Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 576 (App. 1994). Substantial noncompliance during the statutory time frame or making only "sporadic, aborted attempts to remedy" the circumstances (even if the parent later begins recovery efforts before the severance hearing) supports a finding of substantial neglect. *See id.*

¶17　　　　Mother does not dispute N.W.'s age, time spent in care, or the adequacy of services. Instead, Mother argues DCS failed to prove she "substantially neglected or willfully refused to remedy the circumstances" leading to N.W.'s out-of-home placement. Specifically, Mother argues the juvenile court's domestic violence analysis was a ruse, hiding its true concern for Mother's chronic marijuana use. Mother claims to have remedied the circumstances underlying N.W.'s removal because she ended her relationship with Boyfriend. But the record supports the juvenile court's finding to the contrary. DCS's reunification plan and services included Mother attending twenty-six group counseling sessions to address domestic violence concerns. Mother only attended five of those sessions. The juvenile court noted that if Mother successfully completed DCS's services, "reunification likely would have occurred." These services included supervised visitation with N.W., and Mother missed more than half of these visitation opportunities.

**¶18** The record supports the juvenile court's finding that Mother substantially neglected or willfully refused to remedy the circumstances necessitating N.W.'s out-of-home placement. Thus, it did not abuse its discretion by terminating Mother's parental rights based on six months' time in care. Given this determination, we need not address the remaining severance ground (termination of prior child relationship for the same ground within two years) in the petition. *See Michael J. v. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

**CONCLUSION**

**¶19** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA