NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KALEB P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.P., B.P., *Appellee*.

No. 1 CA-JV 21-0024
FILED 6-10-2021

Appeal from the Superior Court in Maricopa County
No. JD27467
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1          Kaleb P. ("Father") appeals the juvenile court's order terminating his parental rights to V.P. and B.P. (collectively "children"). Mother is not a party to this appeal. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2          In September 2015, V.P. was born substance exposed to methamphetamine, so the Department of Child Safety ("DCS") took custody of her. DCS filed a dependency petition, alleging Father's inability to parent V.P. due to his incarceration and substance abuse. Father failed to attend the February 2016 dependency hearing, despite already being released from jail. The juvenile court found V.P. dependent and approved a concurrent case plan of family reunification and severance and adoption.

¶3          DCS filed a separate dependency petition regarding B.P. in June 2017, alleging Father's inability to parent due to substance abuse, mental health, and an inability to properly supervise B.P. DCS provided various reunification services, including substance abuse testing and treatment, a psychological evaluation, visitation, counseling, and a family reunification team. Father successfully participated in reunification services, so DCS moved to return both children to Father's physical custody. In January 2018, the juvenile court ordered the children to remain dependent, but placed the children back in Father's care. The court dismissed the dependency petitions two months later.

¶4          In March 2019, the police and DCS received reports alleging that Father's girlfriend physically abused V.P. and that Father left the children unattended while abusing substances. Father first showed a willingness to cooperate with DCS, but then he hid his whereabouts. DCS received another report in May 2019, alleging Father left the children alone in a hotel room. Hotel staff found V.P. eating off the floor and B.P. chewing a piece of plastic. DCS removed the children, who both tested positive for methamphetamines, and placed them in an out-of-home foster placement.

¶5          DCS filed a new dependency petition, alleging Father's inability to parent due to substance abuse, domestic violence, inability to supervise the children, and inability to provide for their needs. Father objected to the domestic violence ground but pled no contest to the other allegations. The court approved a concurrent case plan of family reunification and severance and adoption. DCS referred Father to supervised visitation and substance abuse treatment and testing, but Father failed to meaningfully participate. Father only visited the children once between May and August 2019. DCS also provided V.P. with some therapeutic services.

¶6          In September 2019, Father pled guilty to committing second-degree burglary and he received a 2.5-year prison sentence. Father will have to live in a halfway house upon release and he will be on intensive probation for another 2.5 years. A DCS psychologist recommended against the children visiting Father in-person, but DCS facilitated at least five supervised phone calls since April 2020. In April 2020, the juvenile court changed the case plan from family reunification to severance and adoption. DCS petitioned to terminate Father's parental rights on length of sentence and prior removal grounds.

¶7          The juvenile court held a multi-day severance hearing. Father testified that he would need "at least a year" to prove his parental abilities. He also admitted that he understood needing to complete reunification services, but that he failed to do so. The court severed Father's parental rights on both grounds.

¶8          Father timely appealed, and we have jurisdiction under A.R.S §§ 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

¶9          We review the severance of parental rights for an abuse of discretion. *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 369, ¶ 15 (App. 2018). We will uphold the juvenile court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

¶10          Before irrevocably severing parental rights, "due process requires that the State support its allegations by at least clear and

convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982). "[S]uch a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process." *Id.* at 769. To sever the parent-child relationship, the juvenile court must find, by clear and convincing evidence, parental unfitness based on at least one statutory ground under A.R.S. § 8-533(B). *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

¶11        The juvenile court may sever Father's parental rights based on prior removal if: (1) an out-of-home placement cared for the children under court order; (2) DCS made diligent efforts to provide appropriate reunification services; (3) the juvenile court restored Father's legal custody; and (4) within 18 months after being returned, DCS again removed the children from Father's custody, the children are in an out-of-home placement under the supervision of the juvenile court, DCS, or a licensed child welfare agency, and Father cannot discharge his parental responsibilities. *See* A.R.S. § 8-533(B)(11).

¶12        The juvenile court removed the children from Father's care during the initial dependencies. The court then returned the children to Father's legal custody in March 2018, when it dismissed the dependencies. DCS removed the children 14 months later and placed them with a foster family. And Father's current incarceration prevents him from discharging his parental responsibilities.

¶13        DCS provided significant reunification services during the initial dependencies. These services included substance abuse treatment, drug testing, a psychological evaluation, and visitation. Father's successful participation in services led the juvenile court to restore his legal custody. Father argues DCS provided no reunification services while incarcerated. But the record suggests otherwise. DCS's psychologist recommended against in-person visits, but Father received several supervised phone calls. And Father's argument does not account for the four months preceding his incarceration, during which DCS provided supervised visitation, drug testing, substance abuse treatment, and therapeutic services for V.P. *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 94, ¶ 20 (App. 2009) (DCS must provide efforts with a reasonable prospect of success in reuniting the family). DCS provided these services, before changing the case plan to severance, in support of its goal to reunify Father with the children. Father simply failed to utilize these services.

¶14        Father also contends the "parental responsibilities" element requires more reunification services to fairly assess his ability to parent the

children. We disagree. Father's incarceration, and his inevitable halfway house stay, prevent him from assuming any parental responsibility.

¶15 The record supports the juvenile court's finding that DCS provided appropriate reunification services. The court thus did not abuse its discretion by severing Father's parental rights based on the prior removal ground. *See* A.R.S. § 8-533(B)(11). Given this determination, we need not address the other severance ground (length of sentence) in the petition. *See Michael J. v. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

## CONCLUSION

¶16 We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

5