NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.C.

No. 1 CA-JV 22-0256
FILED 3-28-2023

---

Appeal from the Superior Court in Maricopa County
No. JD41329, JS21056
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

_____

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

_____

**P A T O N**, Judge:

¶1        Gabriel E. ("Father") appeals the superior court's order terminating his parental rights to his child.  Although the superior court also terminated the child's mother's ("Mother") parental rights, she is not a party to this appeal.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        N.C. was born substance-exposed to methamphetamine in September 2021.  Mother admitted to abusing methamphetamine and fentanyl while pregnant.  When the Department of Child Safety ("DCS") interviewed Mother, she did not identify N.C.'s father.  Meanwhile, Father drove maternal grandmother to the hospital at the time of N.C.'s birth, but Father said he was not allowed to go inside.  Nonetheless, Father did not contact DCS or anyone else for information about the child.  Nor did he register with the putative fathers' registry or otherwise seek to establish his paternity.  DCS took custody of N.C. and petitioned to adjudicate the child dependent.

¶3        In February 2022, Father's significant other gave Father's contact information to DCS.  The case manager tried calling Father but could not reach him until April 2022.  At that time, the case manager gave Father a list of locations to complete paternity testing, but he did not test for another two months.  DCS thereafter petitioned to terminate his parental rights based on abandonment pursuant to Arizona Revised Statutes ("A.R.S.") Section 8-533(B)(1).

¶4        After a May 2022 test confirmed Father's paternity, DCS referred him for supervised visits.  The provider had a waitlist, but DCS was prepared to offer Father a case aide who could immediately begin visits.  But Father did not answer or respond to the case manager's calls, and no visit took place.

¶5        Father next contacted the case manager in early September 2022 and requested visits; before trial, he had completed only four visits with almost one-year-old N.C.  The superior court held a combined trial on

the dependency and termination petitions. It then adjudicated N.C. dependent and terminated Father's parental rights. Father appealed. We have jurisdiction under Article 6, Section 15, of the Arizona Constitution, Section 8-235(A), and Rule 601(a) of the Arizona Rules of Procedure for the Juvenile Court.

**DISCUSSION**

**¶6** Father argues there was insufficient evidence to support the termination order. A parent's right to custody and control of his own child, while fundamental, is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000). Severance of a parental relationship may be warranted when DCS proves one statutory ground under Section 8-533 by "clear and convincing evidence." *Id.* "Clear and convincing" means the grounds for termination are "highly probable or reasonably certain." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284–85, ¶ 25 (2005) (citation omitted). The court must also find that termination is in the child's best interest by a preponderance of the evidence. *Id.* at 285, ¶ 29.

**¶7** We will uphold the court's findings of fact "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007) (quoting *State v. Smith*, 123 Ariz. 243, 247 (1979)). "[T]his court will not reweigh the evidence but will look only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶8** A parent may forfeit his parental rights if he abandons his child. A.R.S. § 8-533(B)(1). Abandonment occurs when the parent fails to "provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). Abandonment is measured by a parent's conduct, not his subjective intent. *Michael J.*, 196 Ariz. at 249–50, ¶ 18. The court must consider "whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Id.* "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." A.R.S. § 8-531.

**¶9** Here, reasonable evidence supports the superior court's finding that Father abandoned N.C. Despite knowing about Mother's pregnancy and the child's birth, he took no actions to establish paternity or otherwise care for and protect the child. Although Father's significant other

contacted DCS, Father did not speak with the case manager until the child was about seven months old. Thereafter, Father maintained only intermittent contact with the case manager, and, as a result, only completed four visits before trial. Although he provided gifts and some supplies at those visits, he did not provide the child with any financial support, cards, or letters. The superior court therefore found that Father had taken only minimal steps to establish a relationship with N.C., and reasonable evidence supports that finding. *Kenneth B. v. Tina B.*, 226 Ariz. 33, 37, ¶ 18 (App. 2010) (If a parent makes "only minimal efforts to support and communicate with the child," such minimal conduct can support finding the parent has abandoned the child.).

¶10             Father suggests DCS caused one of the delays because it sent the paternity testing provider list to an address where he does not receive mail. But Father testified at trial that the case manager also gave him the testing location over the phone.

¶11             Father next asserts the superior court erred in finding termination was in N.C.'s best interests. In addition to finding a statutory ground for termination, the superior court must also determine what is in the best interests of the child by a preponderance of the evidence. *Kent K.*, 210 Ariz. at 284, ¶ 22. Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child" against "the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶12             Here, N.C. was bonded with his maternal aunt who was providing for his needs and planned to adopt him. The superior court therefore found that termination would provide N.C. with "permanency with the only family the child has ever known." The court considered Father's recent visits with N.C. but found that because his total efforts over the child's first year were minimal, "it would be a detriment to [N.C.] to keep this matter ongoing while [Father] decides whether he is going to perform the role and functions of a father because it will keep the child in an impermanent position." Reasonable evidence supports these findings.

## CONCLUSION

¶13　　　　We affirm.



AMY M. WOOD • Clerk of the Court
FILED:　　AA