NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS
AS TO A.V., A.V., and E.V.

No. 1 CA-JV 23-0048

FILED 8-17-2023

Appeal from the Superior Court in Maricopa County
No. JD41396
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Father*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

_____

**J A C O B S**, Judge:

**¶1**		Gilbert V. (Father), an incarcerated person convicted of the abuse of his Stepchildren, appeals the juvenile court's order terminating his parental relationship with his Children, AEV, born in June 2010; AMV, born in October 2012; and EV, born in January 2014, under both A.R.S. §§ 8-533(B)(2) and (B)(4). Because reasonable evidence supports the superior court's determination that Father's abuse of his Stepchildren supported a finding of risk to his Children, we affirm the order terminating the parental relationship under A.R.S. § 8-533(B)(2).

## FACTS AND PROCEDURAL HISTORY

### A.	The Familial Relationships at Issue

**¶2**		In 2018, Father and Andrea V. (Mother) were married and raising six children, three of whom were Father's Stepchildren (LG, CG, and AG), and three of whom were Father's biological Children (AEV, AMV, and EV). In the fall of that year, the Stepchildren told Mother that Father had been physically and sexually abusing them. Mother called the police, and Father was arrested. In February 2019, Father pled guilty to an offense between 2016 and 2018 when LG was between 9 and 11 years old. He also pled to two counts of attempted molestation of a minor against CG and AG, between 2011 and 2013 when CG was between 7 and 9 years old and AG was between 9 and 10 years old. All these offenses were dangerous crimes against children under A.R.S. § 13-705.

**¶3**		Even with Father's conviction and long-term incarceration, DCS did not become involved until more than two years later, when in July 2021, DCS received a report that Mother was neglecting the children, using illegal drugs, and experiencing mental health problems. Mother was admitted to a mental health facility, but she was released because her behavior was due to alcohol and methamphetamine use. In early November 2021, Mother was detained after running a red light leading to a car crash that killed one person and injured others.

**B.      The Proceedings to Terminate Father's Parental Rights**

¶4        After Mother was detained, DCS took the three Children and the two minor Stepchildren into temporary custody (one having turned 18 in 2018) and filed a dependency petition. The Children, AEV, AMV, and EV, were placed with Father's mother, their paternal grandmother. At the November 2021 initial dependency hearing, the court directed DCS to provide services to Mother and Father, directed them to participate, and "direct[ed] [DCS] to conduct a psychological consultation regarding [F]ather's visitations" and *sua sponte* "suspend[ed] [F]ather's visitation[] at this time." While Father's visitation was suspended, on January 7, 2022, the court ordered DCS to move to suspend Father's visitation and ordered DCS to direct the Children's placement (their paternal grandmother) to bar Father from all contact with the Children "until the Court has reviewed [F]ather's probation records, psychological evaluation and all necessary documents and determines what is in the children's best interest."

¶5        In March 2022, DCS filed a motion to suspend Father's visitation, noting allegations of abuse by Father from 2018 in the November 2021 Preliminary Protective/Initial Dependency Hearing Report and attaching reports from DCS's Unit Consultant Psychologist, Dr. Lorenzo Azzi. Father opposed the suspension of visits. The court granted the motion to suspend Father's visitation and ordered DCS to "get the therapy started for the children."

¶6        In May 2022, the court adjudicated the Children dependent as to Father. The court also ordered DCS to "contact the psychologist assigned to the children to determine the treatment plan for all three children . . . especially concerning visitation with the [F]ather."

¶7        On June 22, 2022, DCS moved to terminate Father's parental rights. Under A.R.S. § 8-533(B)(2), the State alleged termination was warranted because of the risk posed to the Children by Father's willful sexual abuse of the Stepchildren. DCS also alleged termination was warranted on both bases in A.R.S. § 8-533(B)(4) — the nature of Father's convictions showed his unfitness to parent, and the length of his sentence would deprive the Children of a normal home for a period of years. As factual support for the (B)(4) grounds, the State recited the allegations of Father's abuse of the Children in 2018 in DCS's November 2021 Preliminary Protective Report, including that "Father had a physically and emotionally abusive relationship with his own children," and that DCS's unit psychologist recommended "a cautious approach as to not risk any further psychological or emotional harm to the children."

¶8　　　　On December 5, 2022, the court held a contested termination adjudication at which the only testifying witness was a DCS Supervisor. She confirmed that based on consultations with Dr. Azzi, DCS did not agree with any visitation with the Children because Father had sexually abused the Stepchildren. Even so, the Supervisor testified that the Children had not reported abuse and had not disclosed seeing sexual abuse. She also acknowledged that although these reports occurred in 2018 and Father was convicted in 2019, DCS had not moved for dependency previously. The allegations also reflected that the Stepchildren had observed violent physical abuse of the Children, consisting of hair-pulling, punching, and hitting.

¶9　　　　DCS was aware of some desire by the Children for visits with Father, but it discounted their sincerity or the potential for any benefit from such visits. The Supervisor testified that she was aware that AMV and EV requested visitation with Father, but "[her] understanding is that they flipflop," and "[s]ometimes . . . want contact" including recently. She was not aware that AMV and EV had wanted telephone or video visits. When asked if there was expert evidence to show how supervised and telephonic visits would be harmful to the Children, she stated "[b]ased on my experience, children who've been exposed to sexual abuse and trauma can be coached or use code in efforts to make threats and other situations that would still be harmful to them."

## C.　The Court's Ruling

¶10　　　　On February 2, 2023, the court found three grounds for termination existed and that it was in the Children's best interests to terminate Father's parental rights. First, the court terminated Father's rights under A.R.S. § 8-533(B)(2), finding that Father's abuse of the Stepchildren posed a risk of comparable harm to the Children. Second, the court found termination warranted under A.R.S. § 8-533(B)(4) because of an unrebutted presumption of unfitness to parent created by the nature of Father's felony conviction for sexual offenses against the Stepchildren. Third, the court likewise found termination warranted under A.R.S. § 8-533(B)(4) because of the length of Father's sentence, which would deprive the Children of a normal home for a period of years.

¶11　　　　In analyzing the A.R.S. § 8-533(B)(2) ground, the court found that Father's previous abuse of the Stepchildren posed a risk of abuse to the Children and supported terminating his rights under *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224 (2020). Based on Father's sexual offenses against

the Stepchildren, the court found "that the risk of harm extends to the other children" because:

> Father's sexually abusive conduct included the repeated serious physical abuse of [the Stepchildren] . . . . [and] Father was already abusing [the Children] by punching, hitting, and hair pulling. That his abuse may not have yet included sexual abuse does [not] mean that he would not have gone there-- and it is certainly possible that his biological children would have met the same fate. But even if he never would have sexually abused his own children, the violent sexual abuse of his stepchildren place his biological children at a high risk for escalated physical violence.

The court reasoned that although the allegations were not substantiated, later corroboration of the allegations of sexual abuse "add[ed] substantial credibility to the non-sexual physical abuse allegations" reported by the Stepchildren in 2018.

¶12        The court found termination in the Children's best interests. The court determined that the Children would be harmed by the continuation of Father's parental relationship with them. In doing so, it noted AMV and EV sometimes want contact with Father, but that AEV has consistently refused contact. The court also noted that the Children will not receive immediate permanency upon termination, but they are bonded with their permanent placements, and in the least restrictive placement.

¶13        The court further found that Father's sexual abuse of the Stepchildren was not an aberration or isolated and persisted for seven years, occurring throughout the home including common areas where Father threatened the Stepchildren to extract confidentiality, and thus, it found "credible the Department's belief [that the Children] were probably exposed to at least some of the violence." The court also found that the Children endured Father's direct physical abuse and that "[t]he trauma from that abuse was undoubtedly exacerbated by the Children's fear of facing the kind of abuse suffered by their siblings."

¶14        Father timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235, 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

**¶15**          Father challenges the sufficiency of the evidence to terminate his parental rights to the Children under A.R.S. § 8-533(B)(2) and A.R.S. § 8-533(B)(4). Under A.R.S. § 8-533(B)(2), he argues that his past sexual abuse of the Stepchildren does not pose a risk of harm to the Children that is sufficient to terminate his parental rights. Father also argues that he rebutted the presumption of unfitness to parent based on the nature of his convictions by participating in rehabilitative services and claims that he was hampered in showing actual fitness at the termination adjudication because DCS refused to provide a psychosexual evaluation. Father also argues that having improperly denied reunification services, specifically visitation, the court erred by terminating his parental rights.

**¶16**          Terminating parental rights under A.R.S. § 8-533(B) requires a two-step inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149 ¶ 8 (2018). First, the state must prove and the court must find clear and convincing evidence that there is a statutory ground for termination. *Id.*; *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005) (determining that party seeking termination bears burden of proof to show termination ground by clear and convincing evidence). Second, the court must find by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Alma S.*, 245 Ariz. at 149–50 ¶ 8.

**¶17**          We review for an abuse of discretion the court's decision to terminate parental rights. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579 ¶ 10 (2021). Because the juvenile court is in the best position to weigh evidence and judge credibility, this court will not resolve conflicting evidence or reweigh evidence. *Id.* at 579–80 ¶ 10. Rather, we accept the court's findings of fact "if reasonable evidence and inferences support them," *Alma S.*, 245 Ariz. at 151 ¶ 18 (citation omitted), and "will affirm . . . unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence," *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). *See also Jessie D.*, 251 Ariz. at 579–80 ¶¶ 6, 10 (reviewing to determine the existence of substantial evidence and stating the court "will affirm unless no reasonable evidence supports the court's findings" or the termination order is clearly erroneous); *Sandra R.*, 248 Ariz. at 230 ¶ 28 ("[We] will affirm a severance order unless it is clearly erroneous."). A court abuses its discretion if it misapplies the law, or its findings are not supported by reasonable evidence. *Timothy B.*, 252 Ariz. at 474 ¶ 14.

I.    **There Was Reasonable Evidence to Terminate Father's Parental Rights Under A.R.S. § 8-533(B)(2).**

**¶18**        Termination of Father's rights under A.R.S. § 8-533(B)(2) requires evidence that he "wilfully abused a child."  Abuse is defined to include the sexual conduct and molestation offenses against the Stepchildren for which Father was convicted.  *See* A.R.S. § 8-201(2)(a). Subsection (B)(2) permits termination of Father's parental rights as to the Children if there is clear and convincing evidence in the termination proceedings that his "abuse of any child demonstrates that [he] is similarly unfit to parent" the Children.  *Sandra R.*, 248 Ariz. at 230 ¶ 25.  Thus, the court may "extrapolat[e]" Father's unfitness to parent the Children from the abuse of the Stepchildren if that abuse "inherently places" the Children "at risk of harm."  *Id*. at 229 ¶ 23.  Any "extrapolation of unfitness must pass constitutional muster under *Santosky* [*v. Kramer*, 455 U.S. 745 (1982)]," *id*. at 229–30 ¶¶ 24, 27, and requires "clear and convincing evidence that previous abuse of a child supports a finding of risk of harm to non-abused children," *id*. at 230 ¶ 26.  *See id*. at 228 ¶ 17 ("[T]o terminate parental rights to children who exhibit no evidence of . . . abuse, under § 8-533(B)(2), the juvenile court must find . . . by clear and convincing evidence, that there is a risk of harm to those children.").

**¶19**        To this end, *Sandra R*. requires "a demonstrable connection between the ground for termination and the harm or risk of harm to a child."  *Id*. at 229 ¶¶ 23–24.  In evaluating the risk of harm, we consider the nature of the abused children's injuries and the age and vulnerability of the children at issue in the termination proceedings.  *See id*. at 231 ¶ 31.

**¶20**        Relying on *Sandra R*., Father argues the court merely speculated that his past abuse of the Stepchildren posed a risk to the Children, and he contends the facts prove otherwise including that he resided with the Children for a portion of their lives and never sexually abused them.

**¶21**        DCS argues that the court found that Father's serious physical abuse of the Stepchildren posed a risk to the Children because Father "was already abusing [the Children]" and they were at a high risk of "escalated physical violence."  DCS argues that because Father has not contested the court's physical abuse finding, he has conceded the accuracy of the finding and waived the issue on appeal.

**¶22**        Here, Father sexually abused the Stepchildren, leading to DCS's involvement with the family in late 2018 and Father's resultant

convictions for the offenses in 2019.  Although the Children did not report any direct abuse by Father, the DCS intake addendum reflects that "[i]t was reported that all of the children were molested by the stepfather" and he "would physically abuse the children."

**¶23**        The court determined that Father's sexually abusive conduct with the Stepchildren included serious physical abuse.  Based on reports from the Stepchildren, the court likewise found Father had physically abused the Children in 2018, by punching, hitting, and pulling their hair. We agree with DCS that Father does not challenge these findings on appeal.

**¶24**        Given these undisputed facts, there is reasonable evidence that the violent abuse of the Stepchildren placed the Children "at a high risk for escalated physical violence."  Applying the standard of review to the facts of record, there is "a demonstrable connection" that "inherently places" the Children at a risk of harm comparable to that of the Stepchildren sufficient to "impute[] the risk of harm" to the Children and extrapolate by clear and convincing evidence Father's unfitness to parent them. *See Sandra R.*, 248 Ariz. at 228–31 ¶¶ 17, 23–24, 26, 31.  As such, we affirm the court's determination that there is clear and convincing evidence to terminate Father's parental rights on this statutory ground.

**¶25**        We also affirm the court's decision that based on the facts and circumstances of this case, terminating Father's parental rights is in the Children's best interests.  *See Jessie D.*, 251 Ariz. at 579–80 ¶ 10 (stating it is the superior court's province to weigh evidence and judge credibility and the appellate courts do not reweigh or resolve conflicts in evidence). Reasonable evidence supports the court's determination that Father exposed the Children to some violence and trauma and the Children would be harmed by the continuation of the relationship. *See Timothy B.*, 252 Ariz. at 474 ¶ 14 (stating we affirm if findings are supported by reasonable evidence).  Accordingly, we affirm the court's termination of Father's parental rights on this ground.

**II.    We Decline to Decide Whether Denial of Visitation Violated Father's Constitutional Rights, Because He Did Not Argue that Point With Respect to Termination Under A.R.S. § 8-533(B)(2), and Because He Accedes to Orders Barring Contact with the Children.**

**¶26**        This matter came close to presenting novel issues requiring further analysis for resolution.  Significantly, the superior court "acknowledge[d] that our Supreme Court has implied that rehabilitative efforts must be made in every severance case," citing *Jessie D.*, 251 Ariz. at

581–82 ¶¶ 19–21.  The superior court terminated under three grounds —
willful abuse of a child under A.R.S. § 8-533(B)(2), and length of sentence
and nature of felony under A.R.S. § 8-533(B)(4).  And though it terminated
Father's parental rights without allowing any visitation between Father and
Children during the fourteen-month pendency of the proceeding, the
superior court did so without finding that visits with Father posed a danger
to the Children, as it must when terminating for length of sentence.  *See id.*
at 582 ¶ 21 ("If DCS seeks to terminate parental rights under § 8-533(B)(4)'s
provision addressing the parent's length of felony sentence, and an
incarcerated parent requests reunification services, such as visitation, and
providing the services will not endanger the child, DCS must make
reasonable efforts to provide these services.").

¶27        But Father did not present for our review the question of
whether *Jessie D.* requires visitation services (absent a finding of danger
from visitation) in all types of termination cases, including terminations
under A.R.S. § 8-533(B)(2).  Father did argue in our court that, given *Jessie
D.*, his civil liberties as a parent were violated by the terminations under
A.R.S. § 8-533(B)(4).  However, Father confined his constitutional argument
that lack of visitation made the termination erroneous to terminations
under A.R.S. § 8-533(B)(4).  Father's argument that the superior court erred
in terminating his rights under A.R.S. § 8-533(B)(2) was limited to the far
narrower assertion that his sexual abuse of the Stepchildren did not present
a risk of harm to the Children, as the court extrapolated and found.  To the
extent Father asserted that he cannot harm the Children from prison, he
only did so in the context of claiming that the Children are adequately
protected from harmful interaction with him because of existing criminal
and juvenile court orders barring him from all contact with them.  That
argument accedes to the orders rather than challenging them.  We thus do
not consider here whether *Jessie D.* requires the provision of visitation
services (absent a finding of danger from visitation) in termination cases
under A.R.S. § 8-533(B)(2).

## CONCLUSION

¶28        For the reasons stated, we affirm.

